FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2004 MAY 27  PM 3: 49

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KIM W. LUBKE | § | |
| | § | |
| VS. | § | CIVIL ACTION |
| | § | NO. 4:02-CV-0188-Y |
| CITY OF ARLINGTON | § | |

## DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, ALTERNATIVE MOTION FOR NEW TRIAL, AND BRIEF IN SUPPORT

Defendant City of Arlington (the "City"), pursuant to Federal Rule of Civil Procedure 50(b), renews its motion for judgment as a matter of law and alternatively requests a new trial.

## **TABLE OF CONTENTS**

BACKGROUND..................................................................................................................1

LEGAL STANDARD........................................................................................................1

ANALYSIS OF LUBKE'S FMLA CLAIMS...............................................................1

ARGUMENT AND AUTHORITY .................................................................................2

    A. Lubke failed to present legally sufficient evidence that his wife had a serious health
       condition" under the FMLA on the days in question. ..........................................2

        1. Incapacity of "more than three consecutive calendar days"
           involving "treatment."................................................................................4

        2. "Subsequent treatment or period of incapacity relating to the same condition."..........6

        3. "Chronic serious health condition." ................................................................8

    B. Lubke's inability to present expert testimony resulted in a lack of legally sufficient
       evidence that Mrs. Lubke had a "serious health condition" for other reasons,
       as well as that he was "needed to care for" her. ..................................................9

    C. Lubke did not present legally sufficient evidenced that he gave timely and adequate
       notice of his need for FMLA leave. ..................................................................10

    D. Plaintiff Did Not Take FMLA Leave Because He Failed to Provide a
       Required Medical Certification. ........................................................................12

        1. The City required a medical certification.................................................12

        2. Lubke was not excused by the alleged failure to follow procedural regulations
           because the City complied with the substance of the FMLA and Lubke
           suffered no prejudice as a result of the procedural deficiencies. .................13

           a. Lubke has overstated the procedural deficiencies................................13

           b. The procedural deficiencies do not prohibit the City from relying on
              Lubke's failure to provide a medical certification. ..............................14

        3. Lubke was not excused under the "less-stringent" regulation. ..................16

        4. Lubke's post-discharge submissions were untimely..................................18

E.  Lubke Failed to Present Legally Sufficient Evidence of a Motive to Discriminate Against Him for Taking FMLA Leave. ........................................................ 18

F.  The City Conclusively Proved its Mixed-Motive Defense. ............................................... 19

G.  Lubke Failed to Present Legally Sufficient Evidence to Support his Denial of FMLA Leave claim. ........................................................................................................ 19

CONCLUSION ............................................................................................................................. 20

# **TABLE OF AUTHORITIES**

*Anthony v. Chevron USA, Inc.,*
284 F.3d 578 (5th Cir. 2002) ............................................................................. 1

*Aubuchon v. Knauf Fiberglass,*
359 F.3d 950 (7th Cir. 2004) ............................................................................ 18

*Ausler v. Engineered Polymer Solutions,*
No. 01-C-50439, 2003 U.S. Dist. LEXIS 13043 (N.D. Ill. July 28, 2003) ....................... 16

*Austin v. Haaker,*
76 F. Supp. 2d 1213 (D. Kan. 1999) ................................................................... 9

*Bell v. Jewel Food Store,*
83 F. Supp. 2d 951 (E.D. Ill. 2000) .................................................................... 9

*Boeing Co. v. Shipman,*
411 F.2d 365 (5th Cir.1969) ............................................................................. 1

*Briones v. Genuine Parts Co.,*
225 F. Supp. 2d 711 (E.D. La. 2001), *amended,*
2002 U.S. Dist. LEXIS15752 (E.D. La. Sept. 17, 2002) ...................................... 19

*Brungart v. Bell South Telecomms.,*
231 F.3d 791 (11th Cir. 2001), *cert. denied,* 532 U.S. 1037 (2001) ................................ 15

*Chaffin v. John H. Carter Co.,*
179 F.3d 316 (5th Cir. 1999) ............................................................................. 2

*Chaffin v. John H. Carter Co., No. Civ. A. 96-2127-D,*
1998 U.S. Dist. LEXIS 448 (E.D. La. Jan. 16, 1998), *aff'd,* 179 F.3d 316
(5th Cir. 1999) ........................................................................................... 10

*Collins v. Merck-Medco Rx.,*
No. 3:00-CV-1852-X, 2001 U.S. Dist. LEXIS 15143 (N.D. Tex. Sept. 24, 2001) ........... 18

*Curry v. Neumann,*
2000 U.S. Dist. LEXIS 14758 (S.D. Fla. April 3, 2000) ........................................... 14, 18

*De Hoyos v. Bristol Laboratoriess Corp.,*
218 F. Supp. 2d 222 (D. P.R. 2002) .................................................................... 10

*Dolese v. Office Depot,*
231 F.3d 202 (5th Cir. 2000) ............................................................................. 15

*Dormeyer v. Comerica Bank-Illinois,*
223 F.3d 579 (7th Cir. 2000) ............................................................................. 15

*Girling Health Care, Inc. v. Shalala,*
    85 F.3d 211 (5th Cir.1996)............................................................................ 5

*Gulf Coast Real Estate Auction Co. v. Chevron Industrial, Inc.,*
    665 F.2d 574 (5th Cir.1982)............................................................................ 1

*Hodgens v. General Dynamics Corp.,*
    144 F.3d 151 (1st Cir. 1998) .......................................................................... 2

*Howell v. Standard Motor Products,*
    Civ. A. No. 4:99-CV-987-E,
        2001 U.S. Dist. LEXIS 12332 (N.D. Tex. August 10, 2001)................................ 16

*Conoshenti v. Public Serv. Electric & Gas Co.,*
    364 F.3d 135 (3rd Cir. 2004).......................................................................... 16

*Joslin v. Rockwell International Corp.,*
    8 F. Supp. 2d 1158 (N.D. Iowa 1998) ............................................................ 9

*Katekovich v. Team Rent a Car of Pittsburg, Inc.,* 36 Fed. Appx. 688, 690-91
    (3rd Cir. 2002)............................................................................................. 15

*Manuel v. Westlake Polymers Corp.,*
    66 F.3d 758 (5th Cir. 1995)........................................................................... 10

*Mattern v. Eastman Kodak Co.,*
    104 F.3d 702 (5th Cir. 1997).......................................................................... 1

*McGregor v. Autozone,*
    180 F.3d 1305 (11th Cir. 1999)...................................................................... 15

*Moreno v. Summit Mortgage Corp.,*
    364 F.3d 574 (5th Cir. 2004).......................................................................... 5

*Mt. Healthy City Board of Ed. v. Doyle,*
    429 U.S. 274 (1977) ..................................................................................... 19

*Murray v. Red Kap Industrial,*
    124 F.3d 695 (5th Cir. 1997).......................................................................... 9

*Price v. Marathon Cheese Corp.,*
    119 F.3d 330 (5th Cir. 1997)................................................................. 9, 10, 11

*Price Waterhouse v. Hopkins,*
    490 U.S. 228 (1989) ..................................................................................... 19

*Ragsdale v. Wolverine World Wide,*
    535 U.S. 81 (2002) ................................................................................. 14, 15

*Rankin v. Seagate Technologies, Inc.,*
  246 F.3d 1145 (8th Cir. 2001) ........................................................................ 4

*Reeves v. Sanderson Plumbing Products, Inc.,*
  530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ................................ 1

*Rogers v. Bell Helicopter Textron, No. Civ. A. 3:99-CV-988-R,*
  2000 U.S. Dist. LEXIS 12087 (N.D. Tex. Aug. 17, 2000),
    *aff'd,* 252 F.3d 436 (5th Cir. 2001) ....................................................... 18

*Satterfield v. Wal-Mart Stores,*
  135 F.3d 973 (5th Cir. 1998) ................................................................ 10, 11, 18

*Stiefel v. Allied Domeco Spirits & Wine,*
  184 F. Supp. 886 (W.D. Ark. 2002) .............................................................. 7, 9

*Thorson v. v. Gemini, Inc.,*
  205 F.3d 370 (8th Cir. 2000) ........................................................................ 5

*Walthall v. Fulton Co. Sch. District,*
  18 F. Supp. 2d 1378 (N.D. Ga. 1998) ........................................................... 10

## FEDERAL STATUTES AND REGULATIONS

29 U.S.C. § 2611(11) ......................................................................................... 3

29 U.S.C. § 2612(a)(1) ............................................................................... 1, 2, 19

29 U.S.C. § 2613(a) ......................................................................................... 12

29 U.S.C. § 2615(a)(1) ..................................................................................... 2

42 U.S.C. § 2000e-5(g)(2) ................................................................................ 19

29 C.F.R. § 825.114(a)(2) ....................................................................... 3, 4, 5, 8

29 C.F.R. § 825.220(c) .............................................................................. 2, 20

29 C.F.R. § 825.305(a) ................................................................. 12, 13, 14, 17

29 C.F.R. § 825.306 .................................................................................... 12

29 C.F.R. § 825.311(b) ................................................................................ 12

**AGENCY OPINIONS**

FMLA-43, Wage and Hour Manual (BNA) 99:3039 (August 24, 1994) ........................................ 5

FMLA-60, Wage and Hour Manual (BNA) 99:3059 (May 2, 1995)............................................... 5

FMLA-87, Wage and Hour Manual (BNA) 99:3095 (Dec. 12, 1996)............................................ 6

FMLA-108, Wage and Hour Manual (BNA) 99:3122 (April 13, 2000)........................................ 17

## BACKGROUND

This case was tried to a jury, which reached its verdict on April 15, 2004. The jury found in favor of plaintiff Kim W. Lubke on his claims under the Family and Medical Leave Act of 1993 ("FMLA") for denial of leave and discriminatory discharge and awarded him $395,000 in wages and/or salary and employment benefits. The jury also found against the City's on its mixed-motive defense. The Court entered judgment on the verdict on May 13, 2004. The City asks the Court to enter judgment as a matter of law in its favor.

## LEGAL STANDARD

The legal standard governing motions for judgment as a matter of law is well-established:

> Under the standard articulated in Fed. R. Civ. P. 50(a), a district court properly grants a motion for judgment as a matter of law only when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue." Fed. R. Civ. P. 50(a); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000). . . . In order to survive a Rule 50 motion and present a question for the jury, the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of their claim. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc) (holding that a mere scintilla of evidence is insufficient to present a question for the jury). In other words, the evidence must be sufficient so that a jury will not ultimately rest its verdict on mere speculation and conjecture. *Gulf Coast Real Estate Auction Co. v. Chevron Indus., Inc.*, 665 F.2d 574, 577 (5th Cir.1982). In determining whether there is a jury question, the court should consider all the evidence presented at trial in the light most favorable to the non-moving party. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir. 1997).

*Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002).

## ANALYSIS OF LUBKE'S FMLA CLAIMS

Under the FMLA, employees are allowed up to 12 weeks of unpaid leave in a 12-month period for certain reasons, including to care for a spouse who has a serious health condition, as well as restoration to the same or similar job upon completion of the leave. 29 U.S.C. § 2612(a)(1). The statute also makes it unlawful for employers (a) "to interfere with, restrain, or

deny the exercise of or the attempt to exercise, any right provided under this subchapter," 29 U.S.C. § 2615(a)(1), or to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter," *id.* at § 2615(a)(2). "Thus, employers have a prescriptive obligation under the FMLA – they must grant employees substantive rights guaranteed by the FMLA – and they have a proscriptive obligation – they may not penalize employees for exercising these rights." *Chaffin v. John H. Carter Co.,* 179 F.3d 316, 319 (5th Cir. 1999).

Lubke first contends that the City denied him FMLA leave by not paying him for the days in question. But Lubke's primary claim falls in the latter category – he alleges that he was fired for taking time off that should have been protected by the FMLA. *See* 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees . . . who have used FMLA leave."); *Hodgens v. General Dynamics Corp.,* 144 F.3d 151 (1st Cir. 1998). The City contends that both of Lubke's claims fail and that the City is entitled to judgment as a matter of law.

## ARGUMENT AND AUTHORITY

**A.     Lubke failed to present legally sufficient evidence that his wife had a serious health condition" under the FMLA on the days in question.**

A required element of Lubke's FMLA claims is, of course, that his wife had a serious health condition as defined by the FMLA on the days in question.  29 U.S.C. § 2612(a)(1)(C). The City does not dispute that Mrs. Lubke was ill at the end of 1999. But the question is whether she met the technical legal definition in the statute and regulations.  That definition has very specific requirements, and there is no legally sufficient evidence that she fits within any part of it.

The statute defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11).[1]   The regulations promulgated by the Department of Labor ("DOL") explain the meaning of the term in far greater detail.   The regulations set out five types of conditions that can qualify as "continuing treatment by a health care provider."   29 C.F.R. § 825.114(a)(2).  Lubke relies on subsections (i) and (iii) of the applicable regulation:

> (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.
>
> . . .
>
> (iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
>
> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
>
> (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
> (C) May cause episodic rather than a continuing period of incapacity e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.114(a)(2)(i), (iii) (emphasis added).

---

[1] The term also includes "inpatient care," but Lubke does not assert coverage under that provision.

Lubke has asserted two possibilities for fitting his wife's condition into the technical DOL of serious health condition.  First, he claims that his wife experienced an incapacity in late-December 1999 that involved treatment under subsection (a)(i)(A) and/or (B).  Second, he claims that his wife's claimed longstanding back condition supports coverage, although the precise basis for the coverage he asserts is unclear.  He may be contending that the back condition qualifies as the initial period of incapacity and treatment required by (a)(i) and the December 1999 claimed incapacity was a period of subsequent incapacity "relating to the same condition."  He clearly is contending that the back condition places Mrs. Lubke within the coverage of (a)(iii) related to incapacity due to a "chronic serious health condition."  None of those theories works in this case.

### 1. Incapacity of "more than three consecutive calendar days" involving "treatment."

Section 825.114(a)(2)(i) requires (excluding the subsequent-treatment portion discussed below) a "period of incapacity of more than three consecutive calendar days . . . that also involves" either "treatment two or more times by a health care provider" or "treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider."  29 C.F.R. § 825.114(a)(2)(i).  The "period of incapacity" Lubke alleges was from December 29, 1999, through January 2, 2000.  *See Joint Pretrial Order* at 5 (item 16).  Conceding for purposes of this argument that Mrs. Lubke was in fact incapacitated on those days, she still does not fit within the definition of "serious health condition."

To satisfy the regulation, the person at issue must have received treatment *during* the period of incapacity – that is the "period of incapacity" itself has to involve "treatment" either twice, or once if it results in a regimen of continuing treatment.  *Rankin v. Seagate Technologies, Inc.*, 246 F.3d 1145, 1148 (8th Cir. 2001) (plaintiff was required to prove ("(1) that she had a

period of incapacity . . . ; (2) that this period of incapacity exceeded three days, and (3) that she received 'continuing treatment by . . . a health care provider' *within the period*.") (emphasis added); *Thorson v. v. Gemini, Inc.*, 205 F.3d 370, 377 (8th Cir. 2000) (same under interim regulations); DOL W&H Adm., FMLA-60, Wage and Hour Manual (BNA) 99:3059 (May 2, 1995) ("the regulations require the absence from work, or from school or incapacity in performing other daily activities to be greater than three calendar days *and to include* continuing treatment by (or under the supervision of) a health care provider") (emphasis added); DOL W&H Adm., FMLA-43, Wage and Hour Manual (BNA) 99:3039 (August 24, 1994)[2] (regulations cover "any period of incapacity requiring absence from work, school, or other regular daily activities of more than 'three calendar days' and continuing treatment by (or under the supervision or) a health care provider *during this period of time*") (emphasis added);[3] *cf.* 29 C.F.R. § 825.114(e) (pointing out that absences attributable to incapacity under subsection (a)(ii) or (a)(iii) are covered "even though the employee or the immediate family member does not receive treatment from a health care provider during the absence . . . .").

Mrs. Lubke did not receive treatment during the period of incapacity (December 29, 1999 - January 2, 2000). She saw Dr. Wilkerson on December 22, 1999, well before the period. She did not see or even talk to Dr. Pulliam in December. Although she did receive two prescription refills from his office, that does not qualify as "treatment" under section 825.114(a)(2)(i). The DOL interprets the term "treatment" to require more than a phone call to the doctor, as explained in a 1996 opinion letter:

---

[2] The DOL opinions listed in this motion are contained at Tab C of the Appendix in Support of Defendant's Post-Judgment Motions.

[3] "Of course, [c]ourts are required to 'give substantial deference to an agency's interpretation of its own regulations'". *Moreno v. Summit Mortgage Corp.*, 364 F.3d 574, 577 (5th Cir. 2004) (quoting *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 215 (5th Cir.1996)).

**Question 1B: What if the employee telephones the doctor but does not actually see the doctor for an examination?**

Answer 1B: If an employee who has the flu only telephones the doctor but is not seen or examined by the doctor, those circumstances would not qualify as "treatment" under the regulations. Treatment means an examination to determine if a serious health condition exists, evaluations of the condition, and actual treatment by the health care provider to resolve or alleviate the condition. A telephone conversation is not an examination. *An examination or treatment requires a visit to the health care provider to qualify under FMLA.*

DOL W&H Adm., FMLA-87, Wage and Hour Manual (BNA) 99:3095 (Dec. 12, 1996) (emphasis added).[4]   Because Mrs. Lubke did not obtain treatment during the period of incapacity, Lubke did not meet his burden of proof under the first theory he asserts.

2.   **"Subsequent treatment or period of incapacity relating to the same condition."**

Lubke may rely on another portion of the "more-than-three-consecutive-days" regulation which states that once a person meets the time and treatment requirements, "any subsequent treatment or period of incapacity relating to the same condition" is also covered.  He may contend that his wife's claimed longstanding back condition long ago satisfied the initial three-day incapacity and treatment requirements and that her December 1999 incapacity was covered because it was a subsequent period of incapacity "relating to the same condition."  That argument cannot succeed because of the absence of expert testimony needed to support it.

The City has argued that expert testimony is required generally to prove a serious health condition, and the City re-urges that argument below.  But even if the Court rejects the broader argument, it cannot be disputed that an expert medical opinion is required to show that Mrs. Lubke's claimed December 1999 back pain was "relat[ed] to the same condition" she testified

---

[4] Nor does the fact that Mrs. Lubke obtained two prescription refills from Dr. Pulliam's office on December 29, 1999, place her within subpart (B), which refers to "a regimen of continuing treatment under the supervision of the health care provider."  The regulation requires "treatment" that *results in* such a regimen and thus requires an actual visit to the doctor at least once during the period of incapacity.

about having on a long-term basis.  Without expert testimony, there is no way to know if Mrs.

Lubke's back pain in December 1999 was related to her prior (undiagnosed) condition or was an

entirely separate, unrelated back condition.  The court in *Stiefel v. Allied Domeco Spirits & Wine*,

184 F. Supp. 886 (W.D. Ark. 2002), considered a similar problem.  There, the plaintiff had

suffered a miscarriage in September of 1998 that resulted in a period of incapacity.  In January

and July of 1999, she missed work because of symptoms she thought were related to the

miscarriage.  After her discharge for those absences, she sued under the FMLA.  The court

granted summary judgment because there was no competent evidence that the January and July

absences were the result of an FMLA serious health condition.  The court rejected the plaintiff's

attempt to connect those absences with her earlier miscarriage:

> After reading the pleadings and considering the evidence in a light most favorable
> to the Plaintiff, we must conclude that there are no specific facts which could lead
> a reasonable juror to conclude that the January and/or July 1999 absences were
> attributable to complications arising from Plaintiff's miscarriage in September
> 1998.  The Plaintiff has stated that she believes there was a connection, and we
> have no reason to doubt her sincerity.  However, the record contains no opinion
> from a health care provider to support this medical conclusion.  While Plaintiff is
> competent to testify that she felt bad and couldn't work, (*Rankin*, id. at 1148-49),
> we do not believe that she is qualified to give a medical opinion her physical
> condition was related to the miscarriage.

*Id.* at 891.

The same problem exists here.  Mrs. Lubke may sincerely believe that the back pain she

reported in late-December 1999 was tied to an earlier back condition.  But she is not competent

to make that medical determination.  Expert testimony was required.  Because of the Court's

earlier ruling prohibiting expert testimony at trial, Lubke of course presented no such testimony.

Therefore, he cannot rely on the "subsequent-treatment-or-period-of-incapacity-relating-to-the-

same-condition" aspect of section 825.114(a)(2)(i).

### 3.    "Chronic serious health condition."

Lubke has asserted coverage under the "chronic-serious-health-condition" regulation. 29 C.F.R. § 825.114(a)(2)(iii). He contends that his wife has a chronic back condition and that the period of incapacity in late December 1999 was a result of that condition. For a condition to be a "chronic serious health condition," the condition must be one that requires periodic visits for treatment and continues over an extended period of time. 29 C.F.R. §§ 825.114(a)(2)(iii)(A), (B). Mrs. Lubke does not meet the "requires periodic visits" element. The evidence was that she has seen Dr. Pulliman only *eight* times since 1990 for either neck or back pain. She did not see him at all in 1999 for back pain. "Periodic" must mean more than that. Mrs. Lubke's visits to her doctor regarding her claimed chronic back condition were sporadic at best, less frequent even than the annual check-ups typical for a person with no diagnosed illness at all. They do not meet the standard for a "chronic serious health condition."

The other problem with Lubke's reliance on a claimed chronic serious health condition is the same discussed in the prior section. With a chronic serious health condition, the focus is on one condition that continues over an extended period of time. Lubke was required to but did not present medical expert testimony that the back pain Mrs. Lubke reported in late-December 1999 was part of one condition. Absent a medical expert making the connection, there simply is no way to know whether the pain was part of one condition or whether she simply hurt her back again. In fact, without an expert opinion, the jury could not have determined reasonably that she had a continuing back condition as opposed to a history of separate back strains. Just as Lubke needed expert testimony to show that Mrs. Lubke's condition in late 1999 was "related to" her claimed prior back condition, he also needed such testimony to demonstrate that the late 1999

pain was part of one condition. *See Stiefel*, 184 F. Supp. at 891. The absence of such evidence dooms claimed coverage as a chronic serious health condition.

Lubke did not present legally sufficient evidence that his wife had a serious health condition as defined by the FMLA on the days in question. Consequently, the City is entitled to judgment as a matter of law on his FMLA claims.

**B.    Lubke's inability to present expert testimony resulted in a lack of legally sufficient evidence that Mrs. Lubke had a "serious health condition" for other reasons, as well as that he was "needed to care for" her.**

In addition to the specific problem raised above concerning the need for expert testimony on the particular theories at issue in this case, the lack of expert testimony is a problem more generally. Although there may be some rare cases where a plaintiff could prevail on an FMLA claim without expert testimony, for most cases, expert testimony is not only helpful but necessary. *See Murray v. Red Kap Indus.*, 124 F.3d 695, 698 (5th Cir. 1997); *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 335 (5th Cir. 1997).

Numerous cases hold that proof of a serious health condition requires evidence from a medical professional or health care provider and that a plaintiff cannot rely on a lay assessment of his or her health (or that of the person at issue). *See Bell v. Jewel Food Store*, 83 F. Supp. 2d 951, 959 (E.D. Ill. 2000) (employee must provide evidence from a medical professional or health care provider that he was unable to work to show that he was "incapacitated" as prescribed under the FMLA's definition of "serious health condition"); *Austin v. Haaker*, 76 F. Supp. 2d 1213, 1221 (D. Kan. 1999); (employee's own assessment of his health insufficient to prove incapacity as prescribed under FMLA's definition of "serious health condition"); *Joslin v. Rockwell Int'l Corp.*, 8 F. Supp. 2d 1158, 1161 (N.D. Iowa 1998) (finding that an employee's own testimony that she was unable to work because of her mental illness was insufficient to prove that she was incapacitated).

Because Lubke was prohibited from putting on an expert testimony demonstrating that Mrs. Lubke was incapacitated and otherwise satisfied the "serious health condition" definition, he is not entitled to prevail. Likewise, whether an employee is "needed to care for" a spouse as a result of medical condition is intertwined with an evaluation of the medical condition to such a degree that expert testimony is necessary to establish that aspect of an FMLA case as well. The City is entitled to judgment as a matter of law because of the absence of expert testimony supporting Lubke's case.

**C.    Lubke did not present legally sufficient evidenced that he gave timely and adequate notice of his need for FMLA leave.**

A plaintiff cannot bootstrap a claim under the FMLA, by contending for the first time after discharge that an absence from work was FMLA leave. *Satterfield v. Wal-Mart Stores*, 135 F.3d 973, 980 (5th Cir. 1998) (employer is not required to be "clairvoyant"); *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 335, n.18 (5th Cir. 1997) (citing *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995) (information imparted to employer must give reasonable notice to employer of the request to leave for a serious health condition); *Chaffin v. John H. Carter Co.*, No. Civ. A. 96-2127-D, 1998 U.S. Dist. LEXIS 448, at *11 (E.D. La. Jan. 16, 1998), *aff'd*, 179 F.3d 316 (5th Cir. 1999) (plaintiff cannot make a FMLA claim if FMLA leave never occurred). Although an employee need not expressly invoke the FMLA to provide sufficient notice of the need for FMLA leave, when an employee's behavior indicates a desire for a different type of leave, courts have held that the employee elected non-FMLA leave and cannot later sue as though the leave were FMLA-protected. *Walthall v. Fulton Co. Sch. Dist.*, 18 F. Supp. 2d 1378, 1383 (N.D. Ga. 1998) (having elected to take paid sick leave, the plaintiff may not claim that she was taking FMLA leave in order to state a FMLA claim); *De Hoyos v. Bristol Labs. Corp.*, 218 F. Supp. 2d 222, 227 (D. P.R. 2002) (FMLA claim is an afterthought and there

was no evidence that plaintiff was exercising FMLA rights by taking paid leave to care for mother). In other words, an employee's own behavior can be such that his or her request for leave is deemed to give the employer inadequate notice, thereby precluding an FMLA claim. That is particularly true where the employee is experienced in FMLA leave but fails to make clear his or her intention. *See Satterfield*, 135 F.3d at 980 (noting relevance of plaintiff's prior knowledge of the FMLA in determining whether notice was adequate).

Lubke had over *400* hours of accrued sick leave benefits available under City policy. He engaged in a prolonged internal grievance process to pursue his paid leave for a two-day absence. He never once mentioned the FMLA; instead, the documents he submitted are replete with references to the City's paid sick leave policy. Further, he had previously utilized sick leave benefits to stay home for a single shift or partial shift and received paid sick leave. He gave no indication that this leave was any different from the others.

As a Battalion Chief responsible for interpreting personnel policy for his subordinates, Lubke knew the FMLA. He therefore must have known that the City did not interpret his leave request as one for FMLA leave. There is no reason whatsoever that he could not have invoked the FMLA at some point during the lengthy grievance process. Lubke's own conduct shows that this case is not about an employee taking FMLA leave but about a discharged employee trying to use the FMLA as an afterthought to obtain legal protection for absences. Under similar circumstances, the Fifth Circuit has characterized an FMLA claim as having, "all the hallmarks of a post-hoc attempt to make a silk purse out of a sow's ear." *Price*, 119 F.3d at 335. Because Lubke did nothing to exercise his right to elect FMLA leave, rather than opting for the City's sick leave benefits prior to his termination, he did not establish at trial that he was entitled to FMLA leave.

**D.     Plaintiff Did Not Take FMLA Leave Because He Failed to Provide a Required Medical Certification.[5]**

**1.      The City required a medical certification.**

"An employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee or of the [employee's family member]. The employee shall provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613(a); 29 C.F.R. § 825.305(a). The statute and the regulations specify the information that an employer can require in the medical certification. 29 U.S.C. § 2613(b); 29 C.F.R. § 825.306. The statute and the regulations are absolutely clear that if the employee fails to provide a medical certification requested by the employer, the leave is not FMLA leave, even if the employee gave unambiguous notice to the employer of reasons that, if true, would support FMLA leave. 29 U.S.C. § 2613(a); 29 C.F. R. § 825.311(b) ("If the employee never produces the certification, the leave is not FMLA leave."); *id.* § 825.312(b) (same).

In the February 9, 2000, memorandum to Lubke responding to his grievance, the City told Lubke what was wrong with his request for excused leave in terms that tracked the FMLA regulations:

> You have provided nothing in writing from a doctor substantiating when the condition began, its expected duration, the medical facts that support the certification or a brief statement of treatment. Finally, you have provided nothing in writing from a doctor certifying that your wife required assistance and/or that your presence would be beneficial or assist in her recovery." . . . Absent the receipt of any further substantiated or certification from you, it is my decision . . ..

The language in the memorandum tracks the language in the FMLA, its regulations, and the Department of Labor's medical-certification form. 29 U.S.C. §2613(b); 29 C.F.R. § 825.306(b); Form WH-380, Items 4, 5.a., 6, 8.a., 8.b. (December 1994). Therefore, it is beyond

---

[5] The Court granted judgment as a matter of law against the City on this issue. The City obviously

dispute that the City required a medical-certification.  The points of dispute are: (1) whether the City's failure to notify Lubke of its requirement in the precise, technical the way the DOL regulations specify means that the City cannot rely on Lubke's failure to provide a medical certification; (2) whether the information Lubke submitted was sufficient because of a regulation that makes an employer's "less stringent" certification requirements trump the FMLA's certification requirements; and (3) whether the information Lubke submitted after the City notified him of its intent to terminate his employment was sufficient.

**2.     Lubke was not excused by the alleged failure to follow procedural regulations because the City complied with the substance of the FMLA and Lubke suffered no prejudice as a result of the procedural deficiencies.**

*a.     Lubke has overstated the procedural deficiencies.*

Although in several cases, the City does not deny that it (for good reason) failed to take the procedural steps set out in the DOL regulations concerning medical certification Lubke has in this litigation overstated the failings.  The City therefore briefly addresses the procedural deficiencies Lubke has asserted in prior briefing.

i.     Requesting certification within two business days.

Lubke's reliance on the fact that the City did not ask for a medical certification within two business days of learning of the need for the leave ignores that the regulation imposes that deadline "[i]n most cases" and specifically allows for later requests.  *See* 29 C.F.R. § 825.305(c).

ii.     Advising Lubke of the consequences.

Lubke's reliance on the regulation saying that an employer must advise the employee of the consequences of an employee's failure to provide adequate certification is flawed.  The February 9, 2000, memorandum was clear as to the consequences – the leave would not be

_____

contends that the Court's ruling was error.

approved: Lubke incorrectly focused on the discharge as the consequence.  But the consequence of denying the leave is that it is not approved.  Once leave is determined to be non-FMLA leave, the FMLA does not govern the employer's decision as to what if any adverse action to take. Thus, the employer cannot be required to say what might happen outside of the FMLA context.

iii.    Giving Lubke a deadline.

Lubke also misread the applicable regulation when he complained that the February 9, 2000, request for a medical certification did not give him a deadline.  Although the regulations require the employer to allow an employee to provide a medical certification 15 days after the employer gives notice that one is required, *see* 29 C.F.R. § 825.305(b), "neither the statute nor the regulations require giving the employee notice of a deadline. They require only that the [employer] wait[] 15 days before taking any action against [the employee] . . . ."  *Curry v. Neumann*, 2000 U.S. Dist. Lexis 14758, *12-*13 (S.D. Fla. April 3, 2000).  In any event, the City did not fire Lubke on the 16th day after the notice; it waited 60 days, which is more than reasonable under any measure.

iv.    Advising Lubke of deficiency and allowing him to cure.

Lubke's argument about allowing him to cure is simply wrong.  Prior to his discharge, he never even attempted to submit a medical certification to cure.

b.    *The procedural deficiencies do not prohibit the City from relying on Lubke's failure to provide a medical certification.*

Even assuming that Lubke was completely correct in the hyper-technical failures he asserted, he is flat wrong that the ***consequence*** of such failures is that he is entitled to FMLA leave. The Supreme Court's decision in *Ragsdale v. Wolverine World Wide*, 535 U.S. 81, 88-89 (2002), is dispositive.  In *Ragsdale*, the employer did not comply with a regulation requiring employers to designate leave as FMLA leave but nevertheless treated the employee's absence as

FMLA leave and counted it against his 12-week allotment.  The Supreme Court, though approving the DOL's authority to require designation, rejected the agency's authority to impose a consequence for failing to designate that would result in a substantive expansion of the Act. The Court held that in order to recover under the FMLA, the employee must show that he was prevented by the employer's violation of the regulations from obtaining leave.  *Id.* at 89. [6]

It is clear under *Ragsdale* that the regulations will not be interpreted to give employees more rights than those granted in the FMLA.  Instead, courts must focus on questions of substance.  If an employer's failure amounted to a substantive one and resulted in prejudice to the employee, then the failure may have a more extreme consequence.  *Id.; Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 143-45 (3rd Cir. 2004) (interpreting *Ragsdale* and holding that an employer's failure to advise an employee of his or her FMLA rights can support an FMLA claim only if the employee establishes that he or she was prejudiced by the failure).

The same rationale must be applied to an employer's notification of a medical-certification requirement.  The statute allows an employer to require a medical certification.  It does not specify that an employer must go about doing so in any particular way.  The DOL has

---

[6] In addition to *Ragsdale,* numerous courts have rejected parts of the DOL's FMLA regulations as going too far.  *See Dolese v. Office Depot,* 231 F.3d 202, 203 (5th Cir. 2000) (regulations expanding coverage of FMLA to ineligible employees were invalid) (citing *Covey v. Methodist Hosp. of Dyersburg*, 56 F. Supp.2d 965, 971-972 (W.D. Tenn. 1999)); *McGregor v. Autozone*, 180 F.3d 1305, 1308 (11th Cir. 1999) (regulations that add requirements and grant entitlements beyond those of the statute are invalid); *Brungart v. Bell South Telecomms.*, 231 F.3d 791, 797 (11th Cir. 2001), *cert. denied*, 532 U.S. 1037 (2001) (regulations are invalid insofar as they purport to extend the eligibility provisions of the FMLA to an otherwise ineligible employee); *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000) (notice regulation is invalid as to FMLA ineligible employee); *Katekovich v. Team Rent a Car of Pittsburg, Inc.*, 36 Fed. Appx. 688, 690-91 (3rd Cir. 2002) (regulations governing failure to designate leave are beyond the Department of Labor's authority and contrary to the FMLA); *Howell v. Standard Motor Prods.*, Civ. A. No. 4:99-CV-987-E 2001 U.S. Dist. LEXIS 12332, at *10 (N.D. Tex. August 10, 2001) (failure to notify an employee that his absence from work would be considered as FMLA leave was a technical mistake and did not violate plaintiff's FMLA rights.); *Ausler v. Engineered Polymer Solutions*, No. 01-C-50439 2003 U.S. Dist. LEXIS 13043, at *4-5 (N.D. Ill. July 28, 2003) (employer is not

established a morass of technical rules about how and when an employer must tell an employee of the requirement.  The DOL may have the authority to set such requirements, but the agency does not have the authority to impose the consequence that failing to comply with the requirements results in an inability to take action when an employee knew of the medical-certification requirement but failed to provide one.  At a minimum, the DOL should be allowed to impose that consequence only if the employee demonstrates prejudice as a result of the failure to comply.

Here, the City in fact required a medical certification.  Lubke presented no evidence that the City's procedural failures in notifying him of this requirement resulted in prejudice to him.  Although the City believes that Lubke knew what was required even earlier, there is no question that after February 9th he knew that to approve his leave the City needed information that satisfied the standards set out in the memorandum, which tracked certain FMLA requirements.  At a minimum, the February 9th memorandum provided adequate communication to Lubke of its requirement.  Indeed, how else was he able to know what to submit in the doctor's notes he (untimely) submitted after his discharge?  Under binding Supreme Court authority, Lubke cannot use his procedural "gotchas" to remove his obligation to produce a medical certification when he was given unambiguous notice of what the City required.  His failure to provide such a certification means that the absences were not protected and that the City is entitled to judgment as a matter of law.

### 3.    Lubke was not excused under the "less-stringent" regulation.

Lubke also has relied on the regulation providing that if an employer's sick or medical leave policy imposes medical certification requirements "less stringent" than those in the

---

estopped from claiming that the absence was not covered by the FMLA because the employer did not ask

regulations, the employer can only apply those less stringent requirements when paid leave is substituted for unpaid FMLA leave. *See* 29 C.F.R. § 825.305(e). He says the City's sick leave policy has "less stringent" requirements that he met and thus he need not present an FMLA medical certification. That regulation does not apply because the sick leave policy's requirements are *not* "less stringent."

Although the first part of the policy refers to a "physician's statement" or "other equivalent and acceptable written proof of illness," the policy also says: "A supervisor may at any time require satisfactory proof of the proper use of sick leave and may disallow sick leave in the absence of such proof." That provision obviously gives wide discretion to the City supervisor as to whether medical documentation is or is not adequate. Here, although the City in the past had exercised its discretion by requiring less than that required by the FMLA, in this instance it exercised its right to require more under its policy. The City did so for a good reason: Lubke's absence occurred at a time where the need for fire and other essential personnel was critical given the widespread public concerns about the potentially disastrous occurrences that could take place over the Y2K weekend. Because the City had discretion to require more information under its sick leave policy, the sick leave policy does not fall within the "less stringent" regulation. WH Adm. Op., FMLA-108, Wage and Hour Manual (BNA) 99:3122 (April 13, 2000) (where employer's policy allowed it discretion to seek more information than that allowed under the FMLA, it was not a "less stringent" policy for purposes of the regulations). The City could not of course, require more than the FMLA allowed, but the City also was not bound by the regulation to require less. Accordingly, Lubke was required to

for certification within 2 days.).

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, ALTERNATIVE MOTION FOR NEW TRIAL, AND BRIEF IN SUPPORT – Page 17**

provide a medical certification that complied with the FMLA, not with his view of what the City typically required under its sick leave policy in cases not involving extenuating circumstances.

### 4.   Lubke's post-discharge submissions were untimely.

The medical information Lubke submitted after the City decided to terminate Lubke's employment and so notified him did not satisfy his medical-certification obligation. Lubke did not attempt to provide information of the sort identified in the February 9th memorandum until after his discharge over 60 days later. That attempt plainly was untimely. *Rogers v. Bell Helicopter Textron*, No. Civ. A. 3:99-CV-988-R, 2000 U.S. Dist. LEXIS 12087, at *7-8 (N.D. Tex. Aug. 17, 2000), *aff'd*, 252 F.3d 436 (5th Cir. 2001) (citing *Chaffin*, 179 F.3d at 319); *Curry,* 2000 U.S. Dist. LEXIS 14758 at *12-13; *accord Aubuchon v. Knauf Fiberglass*, 359 F.3d 950 (7th Cir. 2004) (employee who produced doctor's note about his wife's condition after he was fired did so "too late"); *Satterfield*, 135 F.3d at 981 (information provided after discharge decision had been made was "too little, or too late, or both").

In sum, the City required a medical certification to approve Lubke's leave. It told Lubke of that requirement no later than February 9, 2000. He did not submit additional information from a doctor for over 60 days following that notice when he was notified of his discharge. His failure to submit a medical certification means that the absences were not FMLA leave, and he therefore cannot prevail on FMLA claims.

### E.   Lubke Failed to Present Legally Sufficient Evidence of a Motive to Discriminate Against Him for Taking FMLA Leave.

Because Lubke's absences were not covered by the FMLA, the City's decision to terminate his employment did not violate the FMLA. *Collins v. Merck-Medco Rx*. No. 3:00-CV-1852-X, 2001 U.S. Dist. LEXIS 15143, at *9 (N.D. Tex. Sept. 24, 2001); *Rogers*, 2000 U.S.

Dist. LEXIS 12087, at *8; *Briones v. Genuine Parts Co.*, 225 F. Supp. 2d 711, 715 (E.D. La. 2001), *amended*, 2002 U.S. Dist. LEXIS 15752 (E.D. La. Sept. 17, 2002).

**F.      The City Conclusively Proved its Mixed-Motive Defense.**

Under *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), an employer may avoid liability for a discriminatory act if it shows that it would have made the same decision notwithstanding the discriminatory motive. *Id.* at 244-45; *accord Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977).[7] At trial, the City showed that it discharged the only other firefighter who called in sick over the Y2K weekend. That firefighter also failed to follow the call-in procedure and failed to provide adequate medical substantiation. But his absence was indisputably not for an FMLA reason. Lubke did not rebut the testimony presented about the other firefighter. The City submits that its evidence conclusively showed that it would have discharged Lubke notwithstanding the claimed FMLA protection for the absences because he failed to follow proper call-in procedures. The City thus is entitled to judgment as a matter of law.

**G.      Lubke Failed to Present Legally Sufficient Evidence to Support His Denial of FMLA Leave Claim.**

The FMLA provides for unpaid leaves of absence. 29 U.S.C. § 2612(c). Lubke took the time off in question and was not paid for it. He therefore got all that he was entitled to under the FMLA. His contention that the City denied his FMLA claim by not paying him for the absences under the City's sick leave policy is an attempt to federalize the City's employment policies and impose an obligation to provide paid leave under the FMLA. Lubke cited absolutely no support for that position. The regulation he pointed to during the charge conference deals with a

---

[7] Although in one context that notion has been legislatively overruled, *see* Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(g)(2)(B), it remains valid elsewhere.

**DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW, ALTERNATIVE MOTION FOR NEW TRIAL, AND BRIEF IN SUPPORT – Page 19**

situation where an employer treats employees on FMLA leave less favorably than employees on other types of leave. 29 C.F.R. § 825.220(c). Lubke introduced no evidence of discrimination involving paid time off. The law allows for unpaid leaves of absence. It does not allow an employee to sue for paid time off under the guise of a denial-of-leave claim. Lubke's denial-of-leave claim therefore fails, and the City is entitled to judgment as a matter of law on it.

## ALTERNATIVE MOTION FOR NEW TRIAL

Pursuant to Rule 50(b), the City joins with this renewed motion for judgment as a matter of law a motion for a new trial on the ground that the verdict was against the great weight and preponderance of the evidence on all of the issues set out above. Accordingly, the City requests a new trial if the Court denies the motion for judgment as a matter of law.

## CONCLUSION

For the reasons stated, the City asks the Court to grant its motion for judgment as a matter of law and to enter a take-nothing judgment in its favor.

Date: May 27, 2004.

Respectfully submitted,

By: _____

BRYAN P. NEAL
State Bar No. 00788106
Thompson & Knight LLP
1700 Pacific, Suite 3300
Dallas, Texas 75201
Telephone:     (214) 969-1700
Facsimile:     (214) 969-1751

FRANK WAITE
State Bar No. 20667300
Assistant City Attorney
ELIZABETH LUTTON
State Bar No. 12708600
Assistant City Attorney
Arlington City Attorney's Office
Post Office Box 231
Arlington, Texas 76004-0231
(817) 459-6878
(817) 459-6897 (FAX)

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document was served on the plaintiff through his attorney of record, Mr. Roger L. Hurlbut, 3901 Pioneer Parkway, Arlington, Texas 76013, by certified mail, return receipt requested, on May 27, 2004.

_____
BRYAN P. NEAL

015983 000005 DALLAS 1745290.1

**DEFENDANT'S MOTION FOR JUDGMENT AS A
MATTER OF LAW, ALTERNATIVE MOTION FOR NEW TRIAL, AND BRIEF IN SUPPORT – Page 21**