IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DIANE G. REED, | § | |
| | § | CIVIL ACTION NO. |
| Plaintiff | § | |
| | § | 4:02-CV-0188-Y |
| v. | § | |
| | § | |
| CITY OF ARLINGTON, et. al., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO ENFORCE RULE 68**
**OFFER OF JUDGMENT, AND BRIEF IN SUPPORT**

Defendant City of Arlington opposes the motion of chapter 7 bankruptcy trustee Diane G. Reed to enforce her purported acceptance of the rule 68 offer of judgment that the City previously made to former plaintiff Kim W. Lubke.

# TABLE OF CONTENTS

SUMMARY ................................................................................................................. 1

BACKGROUND ........................................................................................................ 1

ARGUMENT .............................................................................................................. 3

    A.   The "Mandate Rule" Precludes the Relief Reed Seeks ..................................... 3

    B.   Reed Lacked Authority to Validly Accept the Offer of Judgment .................... 5

    C.   Enforcing the Offer Would be Futile Because of Rule 60(b)(3) ....................... 7

CONCLUSION .......................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Abrahamsen v. Trans-State Express*,
    92 F.3d 425 (6th Cir. 1996) ........................................................................15

*Anderson v. Cryovac, Inc.*,
    862 F.2d 910 (1st Cir. 1988) ......................................................................15

*Andretti v. Borla Performance Indus., Inc.*,
    426 F.3d 824 (6th Cir. 2005) .........................................................................6

*Ausherman v. Bank of Amer. Corp.*,
    212 F. Supp. 2d 435 (D. Md. 2002) ...........................................................11

*Barber v. International Brotherhood of Boilermakers*,
    841 F.2d 1067 (5th Cir. 1988) .......................................................................5

*Basha v. Mitsubishi Motor Credit of Am., Inc*
    336 F.3d 451 (5th Cir. 2003) .........................................................................5

*Colonial Penn Ins. Co. v. Coil*,
    887 F.2d 1236 (4th Cir. 1989) ............................................................7, 15, 16

*Commodity Futures Trading Comm'n v. Weintraub*,
    471 U.S. 343 (1985)........................................................................................9

*Conway v. Chem. Leaman Tank Lines, Inc.*,
    644 F.2d 1059 (5th Cir. Unit A May 1981) ...................................................5

*Crowe v. Smith*,
    261 F.3d 558 (5th Cir. 2001) ..................................................................3, 4, 5

*In re Cybergenics Corp.*,
    226 F.3d 237 (3rd Cir. 2000) .........................................................................9

*Diaz v. Methodist Hosp.*,
    46 F.3d 492 (5th Cir. 1995) .......................................................................8, 13

*In re Forrest*,
    730 A.2d 340 (N.J. 1999).............................................................................12

*General Universal Sys. v. Lee*,
    379 F.3d 131 (5th Cir. 2004) .......................................................................13

*Harris v. Jackson*,
 192 S.W.3d 297 (Ky. 2006) ...............................................................12

*Henderson v. Stalder*,
 407 F.3d 351 (5th Cir. 2005) ..........................................................3, 4, 5

*Hesling v. CSX Trans., Inc.*,
 396 F.3d 632 (5th Cir. 2005) ...............................................................8

*Johnson v. University College of University of Alabama*,
 706 F.2d 1205 (11th Cir. 1983) ...........................................................6

*Kath v. Western Media, Inc.*,
 684 P.2d 98 (Wyo. 1984) ...................................................................12

*Kentucky Bar Ass'n v. Geisler*,
 938 S.W.2d 578 (Ky. 1997) ...............................................................12

*Kernan v. One Washington Park Urban Renewal Assocs.*,
 713 A.2d 411 (N.J. 1998)...................................................................12

*Kingsdorf v. Kingsdorf*,
 797 A.2d 206 (N.J. Sup. Ct. 2002) .....................................................12

*Koch Refining v. Farmers Union Central Exchange, Inc.*,
 831 F.2d 1339 (7th Cir. 1987) .............................................................9

*Leroy v. City of Houston*,
 906 F.2d 1068 (5th Cir. 1990) .............................................................5

*Litman v. Massachusetts Mut. Life Ins. Co.*,
 825 F.2d 1506 (11th Cir.1987) ............................................................4

*MMAR Group, Inc. v. Dow Jones & Co.*,
 187 F.R.D. 282 (S.D. Tex. 1999)........................................................15

*Mallory v. Eyrich*,
 922 F.2d 1273 (6th Cir. 1991) .............................................................6

*Nebraska State Bar Assoc. v. Addison*,
 412 N.W.2d 855 (Neb. 1987)..............................................................12

*O'Neil v. Bunge Corp.*,
 365 F.3d 820 (9th Cir. 2004) ...............................................................6

*Pendleton v. Central New Mexico Correctional Facility*,
 184 F.R.D. 637 (D. N.M. 1999)..........................................................12

*Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*,
 358 F.3d 694 (10th Cir. 2004) .................................................................................4

*Radecki v. Amoco Oil Co.*,
 858 F.2d 397 (8th Cir. 1988) ...................................................................................6

*Ramming v. Natural Gas Pipeline Co. of Am.*,
 390 F.3d 366 (5th Cir. 2004) ...................................................................................7

*Richardson v. National R.R. Passenger Corp.*,
 49 F.3d 760 (D.C. Cir. 1995) ............................................................................7, 13

*Rozier v. Ford Motor Co.*,
 573 F.2d 1332 (5th Cir. 1978) ...............................................................................14

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
 402 F.3d 1198 (Fed. Cir. 2005)..............................................................................15

*Stewart v. Professional Computer Ctrs.*,
 148 F.3d 937 (8th Cir. 1998) ...................................................................................6

*Summers v. Howard University*
 374 F.3d 1188 (D.C. Cir. 2004) .......................................................................14, 15

*Tollett v. City of Kemah*,
 285 F.3d 357 (5th Cir. 2002) ..............................................................................4, 5

*Virzi  v. Grand Trunk Warehouse and Cold Storage Co.*,
 571 F. Supp. 507 (Mich. 1983) ........................................................................11, 12

*Webb v. James*,
 147 F.3d 617 (7th Cir. 1998) ...................................................................................7

## STATUTES AND RULES

American Bar Association, Model Rules of Professional Conduct, 3.3, 4.1 ................................11

Fed. R. Civ. P. 60............................................................................................. 7, *passim*

Fed. R. Civ. P. 1..........................................................................................................7

Fed. R. Civ. P. 68............................................................................................. 6, *passim*

Fed. R. Evid. 201(d)....................................................................................................1

## SECONDARY AUTHORITIES

B. R. Tempkin, "Misrepresentation by Omission in Settlement Negotiations: Should There be Silent Safe Harbor?"  18 Geo. J. Legal Ethics 179 (2004) .................................11

U.S. Department of Justice, United States Trustee Manual...........................................................13

U.S. Department of Justice, Handbook for Chapter 7 Trustees......................................................13

## SUMMARY[1]

The Court should deny the motion to enforce for three independent reasons: (1) the "mandate rule" prevents the Court from granting the relief Reed seeks because the issue was presented to the Fifth Circuit but not included in the specific instructions on remand; (2) Reed could not validly accept the offer of judgment because it was not made to Reed and she had no authority to accept it; and (3) were the Court to enforce the offer and enter judgment in favor of Reed, the Court would have to immediately vacate the judgment under rule 60(b)(3) because it will have resulted from fraud or at least other misconduct, and the Court need not take the futile step of entering a judgment it must vacate.

## BACKGROUND

The Court entered judgment in Lubke's favor on May 13, 2004.  The City appealed, and on June 30, 2006 the Fifth Circuit issued an opinion affirming in part and reversing in part. *Lubke v. City of Arlington*, 455 F.3d 489 (5th Cir. 2006); Dist. Ct. Dkt. No. 180.  Afterwards, the City and Lubke, represented by his trial counsel Roger Hurlbut, engaged in settlement discussions.  They even sought and obtained from the Fifth Circuit an extension of the deadline to file petitions for rehearing in order to facilitate those discussions.  *App.* 16, 19-25.  Reaching no settlement, the City filed its petition for rehearing on August 8, 2006.  *App.* 16.  But before that, on July 31, 2006, it made a rule 68 offer of judgment to Lubke.  *App.* 1-4.  Ten days later, Reed delivered to Waite a notice purporting to accept, as a bankruptcy trustee, the offer of judgment the City had made to Lubke.  *App.* 92 (Waite Decl. ¶ 3); Dist. Ct. Dkt. No. 174.  That was the first time the City heard of the Lubkes' bankruptcy.  *App.* 92 (Waite Decl. ¶ 3).

---

[1] This response is supported by an appendix under Local Rule 7.1.  Cites to the Appendix are to "*App.*" followed by the relevant appendix page.  The appendix includes a number of items filed in the bankruptcy court or in the Fifth Circuit.  The City requests the Court to take judicial notice of those filings.  FED. R. EVID. 201(d).  In addition, out of an abundance of caution, the City has authenticated the documents through the declaration of Frank Waite.  *App.* 92-93.

1

The City then discovered that Kim and Debbie Lubke filed for a chapter 7 bankruptcy discharge on June 10, 2005. *App.* 42, 47-54. But the Lubkes' sworn bankruptcy schedules did not disclose Kim Lubke's $1.01 million judgment against the City either as an asset or as pending litigation. *App.* 49, 53. Based on those schedules, the Lubkes received a "no-asset" bankruptcy discharge on September 28, 2005. *App.* 55. At no time before Reed's delivery of the purported acceptance of the offer of judgment did Reed, her lawyer Larry Levick, Lubke, or his lawyer Roger Hurlbut, inform the City, this Court, or the Fifth Circuit of the Lubkes' bankruptcy and the resulting fact that Lubke no longer owned the claim that now is again pending before this Court. *App.* 92 (Waite Decl. ¶ 3).

Because the Fifth Circuit still had exclusive jurisdiction over the case, the City determined that the best course was to notify that court of the situation. In a motion to supplement its still-pending petition for rehearing, the City did so and also pointed out that judicial estoppel should bar Lubke's claim. *App.* 16. The City also informed the district court of the developments on the same day. Dist. Ct. Dkt. No. 176. The Fifth Circuit immediately sought a response from Lubke and, after receiving it, scheduled a special hearing. *App.* 16, 33. The hearing notice identified the following issues to be addressed:

1. Whether and what type of sanctions should be imposed for the appellee's conduct of the appeal under false pretenses?

2. Whether the Rule 68 offer of judgment should be enforced?

3. Whether judicial estoppel bars enforcement of any or all of the judgment?

*App.* 33.

Shortly after the special hearing in the court of appeals, Reed filed a complaint in bankruptcy court to revoke the Lubkes' bankruptcy discharge.  As the basis, she alleged fraud by the Lubkes in failing to disclose the judgment against the City.  *App.* 59, 62-66.  Lubke answered through Hurlbut (even though Hurlbut had filed briefing in the Fifth Circuit on behalf of Reed).  *App.* 58-59.  Lubke and Reed then submitted an agreed judgment revoking the bankruptcy discharge.  *App.* 59.  Bankruptcy Judge Houser conducted a hearing on the matter, *App.* 60, 70-91, after which she signed the agreed judgment, *App.* 67-69.

On December 19, 2006, the Fifth Circuit denied the City's petition for rehearing and motion to supplement the petition.  *Lubke v. City of Arlington*, 473 F.3d 571 (5th Cir. 2006); Dist. Ct. Dkt. No. 178.  It modified, however, its earlier remand instructions by directing this Court to take up not only the damages issues remaining but also to determine "in the first instance" the applicability of judicial estoppel.  *Id.*  The remand opinion does not mention the offer of judgment.  *Id.*

## ARGUMENT

### A.     The "Mandate Rule" Precludes the Relief Reed Seeks.

"The mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court."[2] Under the rule, the "district court on remand must implement both the letter and spirit of the appellate court's mandate, and may not disregard the explicit directives of that court."[3] Moreover, "[w]here, as here, further proceedings in the district court are specified in the mandate

---

[2] *Henderson v. Stalder*, 407 F.3d 351, 354 (5th Cir. 2005) (Jones, J.) (internal quotations and alterations omitted).

[3] *Crowe v. Smith*, 261 F.3d 558, 562 (5th Cir. 2001) (internal quotations and alterations omitted).

of the Court of Appeals, the district court is limited to holding such as are directed."[4]   Reed's efforts to have the Court address the rule 68 issue are contrary to the mandate rule.

The mandate here (through incorporation of the Fifth Circuit's opinions)[5] specifies further proceedings.  As modified by the opinion on rehearing, it directs the court to address two issues — the damages recalculation described in the Fifth Circuit's original opinion and the judicial-estoppel issue that the City raised in its motion to supplement its petition for rehearing. *Lubke v. City of Arlington*, 473 F.3d at 571.  Accordingly, "the district court is limited to holding"[6] only those proceedings specified in the opinion.  Considering Reed's motion to enforce thus would violate the mandate rule.

There can be no doubt, moreover, that the Fifth Circuit decided the rule 68 issue.  The special hearing notice listed that issue as one the court would take up.  *App.* 33 (Issue 2: "Whether the Rule 68 offer of judgment should be enforced?").  Both parties addressed it in their supplemental briefing.  *App.* 27-30, 37-38, 40.  And the issue was discussed at the hearing.  Reed's offer-of-judgment issue was considered and rejected by the Fifth Circuit as evidenced by its omission from the remand order.  Thus, the issue is no longer open for consideration by this Court.[7]

---

[4] *Henderson*, 407 F.3d at 354 (citing and quoting *Crowe*, 261 F.3d at 562); *accord Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 711 (10th Cir. 2004) ("[W]hen the further proceedings are specified in the mandate the district court is limited to holding[s] such as are directed. When the remand is general, however, the district court is free to decide anything not foreclosed by the mandate.") (internal quotation omitted); *Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506, 1511 (11th Cir.1987) (en banc) ("When an appellate court issues a specific mandate it is not subject to interpretation; the district court has an obligation to carry out the order. A different result would encourage and invite district courts to engage in ad hoc analysis of the propriety of appellate court rulings.").

[5] *See Tollett v. City of Kemah*, 285 F.3d 357, 364 (5th Cir. 2002) (noting the need to review the appellate court's opinions to determine the scope of the remand).

[6] *Henderson*, 407 F.3d at 354.

[7] *E.g., Henderson*, 407 F.3d at 354 (where Fifth Circuit remanded to allow for one plaintiff to add a missing claim, district court violated mandate rule by allowing a second plaintiff to amend complaint to

4

Reed cannot avoid the problem by asserting that the Fifth Circuit judges simply forgot to mention the issue in the remand order.   First, there is no evidence to support that theory. Second, there is no rule that a court must address each point expressly in order to have resolved it.[8]  Third, even when the Fifth Circuit omits an issue by mistake, district court consideration of that issue is barred by the mandate rule.[9]  If Reed really believed that the Fifth Circuit omitted the rule 68 issue in error, she should have timely raised the issue with the Fifth Circuit itself. [10]

In sum, the Court should dismiss Reed's motion because the mandate rule precludes the court from even considering the rule 68 issue: at least as to events that occurred before the remand, the Court may decide only the two issues specified in the remand order.

## B.      Reed Lacked Authority to Validly Accept the Offer of Judgment.

Traditional contract principles prevent Reed from accepting the rule 68 offer of judgment. In *Basha v. Mitsubishi Motor Credit of Am., Inc.*,[11] the Fifth Circuit held that "[c]ourts apply

---

establish standing that the Fifth Circuit had found missing); *Tollett*, 285 F.3d at 364-66 (where the court of appeals directed the district court to determine the proper amount of fees as sanctions, district court violated mandate rule by redetermining whether and against whom sanctions should be imposed even if acting under different authority than that supporting original sanction determination); *Barber v. International Brotherhood of Boilermakers*, 841 F.2d 1067, 1070-72 (5th Cir. 1988) (district court violated mandate rule where appellate court directed the resolution of four specific issues and the district court reopened the case to accept evidence concerning other union members not mentioned in the earlier proceedings in the case).

[8] *Crowe*, 261 F.3d at 563 ("Even if the prior appellate decision did not explicitly discuss the issues, nevertheless the law of the case operates to preclude their reconsideration on remand if the appellate decree necessarily or implicitly resolved them adversely to the party now seeking to reurge them.") (quoting *Conway v. Chem. Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1061 (5th Cir. Unit A May 1981)).

[9] *Henderson*, 407 F.3d at 354 (noting that the Fifth Circuit "might have" included other issues in the remand order but finding dispositive that it did not); *Leroy v. City of Houston*, 906 F.2d 1068, 1076-77 (5th Cir. 1990) (when the Fifth Circuit remanded for entry of a judgment in a certain amount, district court violated the mandate rule by considering previously awarded costs in addition to that amount even if the Fifth Circuit had simply overlooked the costs).

[10] *Leroy*, 906 F.2d at 1077 ("If plaintiffs felt that this resulted from our having overlooked $16,430.92 of expenses, or was otherwise insufficient or erroneous, they should have moved for rehearing.").

[11] 336 F.3d 451(5th Cir. 2003).

general contract principles to interpret rule 68 offers of judgment."[12]  Other courts agree.[13]  It is

well-settled under traditional contract principles that an offer can be accepted <u>only</u> by the person

to whom it is made.[14]  It does not matter that Reed assumed Lubke's capacity to prosecute the

suit: because the City's offer of judgment was made to Lubke, traditional contract principles

allow only Lubke to accept it.[15]

It also is irrelevant that Reed is the real party in interest now.  First, that does not make

her the same person as Lubke and authorize a deviation from traditional contract principles.  In

other words, who is the real party in interest <u>for purposes of the judicial proceedings</u> is

immaterial.  Second, at the time she purported to accept the offer of judgment, Reed was not

even the real party in interest for purposes of judicial proceedings.  The Court did not grant her

motion to substitute until August 14, 2006, and even then it was before the City was able to

respond.[16]  The simple disposition of the issue is this: the City made the offer to Lubke and only

---

[12] *Id.* at 453.

[13] *See also Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 837 (6th Cir. 2005) ("we should apply general contract principles to interpret Rule 68 offers of judgment."); *Stewart v. Professional Computer Ctrs.*, 148 F.3d 937, 939 (8th Cir. 1998) ("[p]rinciples of contract law are applied to test whether there has been a *valid offer and acceptance* under Rule 68.") (emphasis added); *accord Mallory v. Eyrich*, 922 F.2d 1273, 1279 (6th Cir. 1991); *Radecki v. Amoco Oil Co.*, 858 F.2d 397, 400 (8th Cir. 1988); *Johnson v. University College of University of Alabama*, 706 F.2d 1205, 1209 (11th Cir. 1983).

[14] *See, e.g.*, WILLISTON ON CONTRACTS 4th, §6:27 ("[A]n offer made to one person cannot be accepted by another, even though the offeree purports to assign it."); RESTATEMENT (SECOND) OF CONTRACTS § 52 ("an offer can be accepted only by a person whom it invites to furnish consideration"); *id.* cmt. a. ("The rule that the power of acceptance is personal to the offeree is applied strictly, even in cases where the offeree after acceptance could assign his rights . . . ."); *see also* FED. R. CIV. P. 68 (permitting an offer to "the adverse party" to be accepted by "the adverse party").

[15] RESTATEMENT (SECOND) OF CONTRACTS § 48 ("An offeree's power of acceptance is terminated when the offeree or offeror dies <u>or is deprived of legal capacity</u> to enter into the proposed contract.") (emphasis added); *id.* cmt. c. ("When the offeree dies <u>or lacks capacity</u> . . . acceptance is impossible") (emphasis added); *Id.* § 52, Ill. 1 ("A makes an offer to B, who dies after receiving it.  His executor, though acting within the permitted time, cannot accept."); *see O'Neil v. Bunge Corp.*, 365 F.3d 820, 826 (9th Cir. 2004) ("under normal contract law principles, [claimant's] power to accept the settlement agreement and to be a party to the application [to approve it] ended when he died.  [His personal representative] could not, therefore, complete the settlement application by signing it on [claimant's] behalf after [claimant] died").

[16] The Fifth Circuit denied a similar motion Reed filed there.  *App.* 18.

Lubke could accept it.  Accordingly, Reed was not authorized to accept and could not validly accept the offer of judgment the City made to Lubke.

Although unnecessary for the Court to consider, there is another "authority" problem for Reed.  As she notes in her purported acceptance of the offer, the bankruptcy court must approve the acceptance.  *App.* 5.  The bankruptcy docket sheet does not show that she has sought, much less received, Judge Houser's approval to accept the offer of judgment.  *App.* 41-46.  Having failed for so long even to ask the bankruptcy court whether it would approve of a resolution on the terms of the offer of judgment, she cannot credibly assert that this Court has a "ministerial" duty to enter judgment on the offer.[17]

### C.  Enforcing the Offer Would be Futile Because of Rule 60(b)(3).

All courts agree that judgments resulting from offers of judgment are subject to being set aside under rule 60(b) in the same manner as any other judgment.[18]  When a rule 68-based judgment would be set aside under rule 60, a court need not take the futile step of first entering a judgment, it can simply permit the withdrawal of the offer of judgment.[19]  The Court should — if

---

[17] Reed's reliance on *Ramming v. Natural Gas Pipeline Co. of Am.*, 390 F.3d 366 (5th Cir. 2004), for the proposition that the Court has no discretion in determining whether to enter judgment is misplaced.  First, if that were the law, the Fifth Circuit would have remanded for entry of judgment in accordance with the offer.  Second, that case involves an offer that was accepted by the same party to whom it was made, not another party trying to take advantage of an offer made to someone else.  Third, in describing the court's duty to enter judgment, the opinion used the words "generally" and "usually," *id.* at 370, thus recognizing that the statements were not true in every instance.

[18] *See*, *e.g.*, *Webb v. James*, 147 F.3d 617, 622 (7th Cir. 1998) ("the proper procedural device for relief from a Rule 68 judgment is the same as for any other judgment: Rule 60"); *Richardson v. National R.R. Passenger Corp.*, 49 F.3d 760, 765 (D.C. Cir. 1995) (if the offeror can show that the rule 68 offer was induced by the offeree's misconduct, "the proper way to proceed . . . is for the defendant to attack the judgment produced by the Rule 68 offer . . . under Rule 60").

[19] *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1240 (4th Cir. 1989) (permitting revocation of offer of judgment induced by fraud).  The D.C. Circuit indicated that a judgment should first be entered and then challenged under rule 60(b).  *Richardson*, 49 F.3d at 765.  This Court, however, should follow the Fourth Circuit's approach.  That approach is plainly more efficient and thus more consistent with rule 1 than the contrary approach.  FED. R. CIV. PROC. 1 ("[The Rules] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.").  That is particularly true given the substantial amounts of time — the City's and the Fifth Circuit's — that already have been wasted

it reaches this issue — hold that any judgment entered on the City's rule 68 offer would have to be set aside under rule 60(b) and thus need not be entered at all.

Rule 60(b)(3) permits relief from a judgment based on "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."[20]  The purpose of that rule is to "afford parties relief from judgments which are unfairly obtained."[21]  The rule "is remedial and should be liberally construed."[22]  No one can credibly assert that Lubke's misrepresentations in the bankruptcy court and the Fifth Circuit fail to meet that standard.  Nor can it be argued that either Lubke or the trustee dealt fairly with the City by concealing that Lubke no longer owned his claim.  In short, both Lubke's misconduct and the trustee's own misconduct preclude Reed from taking advantage of the rule 68 offer the City made to Lubke.

Lubke's misconduct is plain.  He failed (under penalty of perjury) to disclose on his bankruptcy schedules the judgment he owned.  The duty to disclose a pending judgment of more than a million dollars is incontestable and uncontested.  There likewise is no dispute that he failed to disclose it.  Although he has claimed, inconsistently, that he was confused and relied on his bankruptcy lawyer's advice, Reed has already disavowed both assertions in her complaint for revocation of the discharge.  *App.* 62-66.[23]  But regardless of his purported reason for failing to

---

because of Lubke's fraudulent conduct in defending the appeal and continuing to discuss settlement directly with the City despite no longer owning his claim.

[20] Fed. R. Civ. P. 60(b)(3).

[21] *Diaz v. Methodist Hosp.*, 46 F.3d 492, 496 (5th Cir. 1995).

[22] *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005).

[23] Presumably, the trustee was convinced that Lubke acted fraudulently by the fact that Lubke also failed to list his (now listed) debt to his attorney, Roger Hurlbut, something that obviously would have led to inquires from the trustee.  Additionally, he failed to list the judgment in this case despite listing other judgments in response to a question asking about any judgments to which the debtor is a party.  *App.* 50.

disclose the judgment, there is no question that the failure constitutes at least "other misconduct" under rule 60(b)(3), if not outright fraud.

Lubke's misconduct prejudiced the City.  He prosecuted the appeal before the Fifth Circuit under false pretenses.  *App.* 33.  Had he revealed the truth at the time he filed for bankruptcy, while the appeal was still in the early stages of briefing, perhaps the City and the trustee could have settled, thus saving the City substantial amounts of attorney's fees and saving the Fifth Circuit the significant resources that go into reviewing a jury verdict.

After the Fifth Circuit's initial opinion in the case, the City relied on the implicit representation that it was negotiating with the right party and made an offer of judgment to Lubke when it should have been dealing with the trustee.  The City would not have made the offer of judgment at issue had it known of Lubke's bankruptcy.  *App.* 93 (Waite Decl. ¶ 4).  And, if it would have made an offer of judgment at all, it certainly would have been a far different amount.  The chapter 7 trustee's primary duty is to collect assets for the benefit of the debtor's creditors.[24]  The Lubkes' unsecured debt disclosed in their 2005 bankruptcy schedules is about $308,000, *App.* 50, far less than the offer of judgment the City made.  Thus, the combination of the Lubkes' false swearing in bankruptcy court and failure to disclose this lawsuit to the trustee (or their bankruptcy to the City), caused the City to make an offer greater than it would have made otherwise.  Any judgment entered as a result of the City's offer of judgment would thus immediately have to be set aside under established rule 60(b)(3) principles.

---

[24] *See*, *e.g.*, *In re Cybergenics Corp.*, 226 F.3d 237, 243 (3rd Cir. 2000) ("A paramount duty of a trustee or debtor in possession in a bankruptcy case is to act on behalf of the bankruptcy estate, that is, for the benefit of the creditors."); *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1342-43 (7th Cir. 1987) (referring to the "paramount duty of a trustee" as "amassing of estate assets for a pro rata distribution to all creditors"); *see generally Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985).

Even accepting for the moment Lubke's story that he just did not know he needed to list the judgment in his bankruptcy papers and he first informed his lawyer (Hurlbut) of the bankruptcy right around the time the City made the offer of judgment, there is still more than enough misconduct to prevent enforcement of the offer.  Roger Hurlbut spoke to Larry Levick, counsel for Reed, at least as early as August 2, 2006, <u>eight days</u> before Reed tried to accept the offer of judgment.  *App.* 34-35.  Hurlbut sent Levick a confirmation letter the next day.  *Id.*  Reed moved to reopen the bankruptcy on August 8, 2006.  *App.* 43 (Br. Dkt. No. 11).  That motion was granted on August 10th.  *App.* 43 (Br. Dkt. No. 12).  Late on the same day, Reed attempted to accept the offer of judgment.  *App.* 92 (Waite Decl. ¶ 3).  During that entire time, <u>nobody</u> contacted the lawyers for the City to inform them that Lubke no longer owned the claim, that a bankruptcy trustee did, and that she was interested in accepting the offer the City made.  *App.* 92 (Waite Decl. ¶ 3).  Astonishingly, Reed chose instead to perpetuate Lubke's falsehood.  The reason for her conduct is obvious: she knew that the City would withdraw the pending offer immediately after it learned of Lubke's bankruptcy.  What is more, after coordinating with Levick on behalf of Reed, Hurlbut called Waite on August 8, 2006 and asked for an extension of time to consider the offer of judgment.  *App.* 93 (Waite Decl. ¶ 5).  He too failed to inform the City that his client no longer owned the claim and thus lacked the legal capacity to prosecute it.  *App.* 93 (Waite Decl. ¶ 5).

Hurlbut, Levick, and Reed, who is herself a lawyer, each had an ethical duty to inform the City — before attempting to accept the offer — of such a material change in circumstances as the original plaintiff's loss of legal capacity to pursue the claim.  Failing to inform opposing counsel in settlement discussions of a development that would materially affect settlement is a well-established ethical violation.  Rules 3.3 and 4.1 of the Model Rules of Professional Conduct

prohibit false statements to the court and to opposing counsel, respectively.[25]   The comments make clear that sometimes the "failure to make a disclosure is the equivalent of an affirmative misrepresentation."[26]   Courts that have considered the matter have held that a lawyer's failure to disclose to the court or opposing counsel a fact material to settlement negotiations violates the lawyer's ethical responsibilities.[27]

Most directly relevant is *Virzi v. Grand Trunk Warehouse and Cold Storage Co.*[28]   There, the plaintiff's attorney in a personal-injury case failed to disclose to the defendant's attorney during settlement discussions that the plaintiff had died.   The defendant's assessment of the plaintiff as a witness significantly affected its valuation of the case for settlement.   The district court reviewed the law and held that an attorney has an "absolute ethical obligation" to "inform opposing counsel and the Court, prior to concluding a settlement, of the death of his client."[29]   The court summarized its reasoning as follows:

> The handling of a lawsuit and its progress is not a game. There is an absolute duty of candor and fairness on the part of counsel to both the Court and opposing counsel. At the same time, counsel has a duty to zealously represent his client's interests. That zealous representation of interest, however, does not justify a withholding of essential information, such as the death of the client, when the settlement of the case is based largely upon the defense attorney's assessment of the impact the plaintiff would make upon a jury, because of his appearance at depositions. Plaintiff's attorney clearly had a duty to disclose the death of his

---

[25]   American Bar Association, Model Rules of Professional Conduct, 3.3, 4.1 (available at http://www.abanet.org/cpr/mrpc/mrpc_toc.html).

[26]   *Id.* Rule 3.3 cmt.

[27]   *See generally Ausherman v. Bank of Am. Corp.*, 212 F. Supp. 2d 435, (D. Md. 2002) (reviewing law on misrepresentations by counsel through both affirmative representations and silence: "Rule 4.1(a)(1) prohibits an attorney from knowingly deceiving a third person, including an opposing counsel, during negotiations. The misrepresentation may be either express or by a failure to disclose."); B. R. Tempkin, "*Misrepresentation by Omission in Settlement Negotiations: Should There be Silent Safe Harbor?*"  18 GEO. J. LEGAL ETHICS 179 (2004).

[28]   571 F. Supp. 507 (Mich. 1983).

[29]   *Id.* at 508.

client both to the Court and to opposing counsel prior to negotiating the final agreement.[30]

Based on the plaintiff's attorney's failure to disclose, the court set aside the settlement agreement.[31]   Many other courts and bar associations have reached the same conclusion as *Virzi*.[32]

The principle applies here.  Lubke did not die, but he suffered the juridical equivalent: with the filing of his bankruptcy action, he lost ownership of, and the legal capacity to pursue, his claim.  Hurlbut and Levick knew that fact at least a full week before Reed attempted to accept the offer of judgment, and Reed herself obviously knew about it for at least some period of time before she filed the motion to reopen the bankruptcy case on August 8 and prepared the acceptance of the offer that she served on the City on August 10.  Yet none of those lawyers disclosed Lubke's juridical incapacity to either the City, the Fifth Circuit, or this Court.  Their "game"[33] was to accept an offer that would not have been made had the City known the truth.

---

[30] *Id.* at 512.

[31] *Id.*

[32] *ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 95-397* (1995) (personal injury lawyer must disclose the death of the plaintiff before accepting a settlement offer); *Harris v. Jackson*, 192 S.W.3d 297, 306 (Ky. 2006) ("disclosure of such an important fact, such as the death of a client, is required"); *Kingsdorf v. Kingsdorf*, 797 A.2d 206 (N.J. Sup. Ct. 2002) (refusing to enforce a settlement agreement based on failure to disclose death of a client: "A lawyer's responsibility to act with candor and honesty necessarily requires disclosure of significant facts, even though the disclosure might not be in the interest of the client); *In re Forrest*, 730 A.2d 340, 343-44 (N.J. 1999) (suspending lawyer for six months for failing to disclose the death of a client); *Pendleton v. Central New Mexico Correctional Facility*, 184 F.R.D. 637, 641 (D. N.M. 1999) (denying rule 11 motion on procedural grounds but stating: "even in the context of finalizing a settlement agreement and release, a knowing failure to disclose a non-confidential, material and objective fact upon inquiry by opposing counsel is improper."); *Kentucky Bar Ass'n v. Geisler*, 938 S.W.2d 578, 580 (Ky. 1997) (suspending attorney and holding that her failure to disclose the death of her client to opposing counsel "amounted to an affirmative misrepresentation" in violation of the Kentucky Ethical Rules); *Nebraska State Bar Assoc. v. Addison*, 412 N.W.2d 855 (Neb. 1987) (suspending attorney for failure to disclose the existence of a $ 1 million umbrella policy); *Kath v. Western Media, Inc.*, 684 P.2d 98, 101 (Wyo. 1984) (setting aside settlement because counsel failed to disclose knowledge of material fact); *see also Kernan v. One Washington Park Urban Renewal Assocs.*, 713 A.2d 411, 465 (N.J. 1998) (Pollack, J., concurring) (finding a duty to disclose defendant's bankruptcy to opposing party).

[33] *Virzi*, 571 F. Supp. at 512.

Reed's failure promptly to ensure that the City knew of Lubke's legal incapacity violated her ethical duties as a lawyer[34] and makes her an aider and abettor of Lubke's concealment of the bankruptcy. It is profoundly disturbing that the trustee — a public official — after learning of Lubke's wrongful conduct would attempt to arrange matters so that she could benefit from the apparent fraud on the bankruptcy system she is supposed to protect. Her behavior easily constitutes "other misconduct" under rule 60(b)(3).[35]

The Fifth Circuit has held that misconduct sufficient to satisfy rule 60(b)(3) "may be shown by evidence that the opposing party withheld information called for by discovery or willfully committed perjury."[36] The D.C. Circuit in *Richardson* accepted the same proposition in connection with an offer of judgment, though the Court eventually held that the standard was not satisfied because the plaintiff was not aware of the false testimony at issue there.[37]

Relatedly, rule 60(b)(3) relief is appropriate where a party gives inconsistent testimony in two judicial proceedings. In *DiPirro v. United States*,[38] a plaintiff recovered $18,000 for lost wages in a personal injury suit against the government by alleging that she had been totally disabled and unable to work from August 10, 1994 through January 5, 1998. After judgment was

---

[34] *See* U.S. Department of Justice, United States Trustee Manual, Chapter 7 Case Administration, § 2-4.8 (trustees remain bound by the ethical standards applicable to their profession) (available at http://www.usdoj.gov/ust/eo/ust_ org/ustp_manual/docs/vol2-2000May-chapt7.pdf); *see also* U.S. Department of Justice, Handbook for Chapter 7 Trustees, 10-1 (describing Chapter 7 duty to avoid dishonesty, deceit, and other misconduct) (available at http://www.usdoj.gov/ust/eo/private_ trustee/library/chapter07/docs/forms/ch7hb0702-2005_amended0306.pdf).

[35] Alternatively, her conduct at least estops her from seeking the benefit of the offer of the judgment. *See Harris*, 192 S.W.3d at 306 (litigant's failure to disclose estopped the litigant to rely on statute of limitations defense).

[36] *General Universal Sys. v. Lee*, 379 F.3d 131, 156-157 (5th Cir. 2004) (emphasis added); *see also Diaz*, 46 F.3d at 497 ("If unequivocal evidence establishes that a party willfully perjured himself, and thereby prevented the opposition from fully and fairly presenting its case, use of Rule 60(b)(3) to grant the innocent party a new trial would be a proper response.").

[37] *Richardson*, 49 F.3d at 765.

[38] 43 F. Supp.2d 327 (W.D.N.Y. 1999).

entered, the government discovered that the plaintiff had been a witness in a criminal trial involving attempted robbery. As part of her testimony in that case, the plaintiff claimed that she could identify the criminal defendant because she had been working at the restaurant he had attempted to rob on November 14, 1997 and for the preceding six weeks. The government moved for relief under rule 60(b)(3). The court granted that motion, noting that the inconsistent testimony presented "clear and convincing proof of a misrepresentation."[39]

Moreover, withholding critical information _requires_ relief under rule 60(b)(3), as the Fifth Circuit has made clear. In _Rozier v. Ford Motor Co._,[40] the defendant failed to produce a document that arguably was covered by the plaintiff's discovery requests. The plaintiff did not learn of the existence of the document until after the jury had found in favor of the defendant. The plaintiff sought relief under rule 60(b)(3). The Fifth Circuit held that the defendant's failure to disclose the document constituted "clear and convincing evidence that [it] engaged in misrepresentation and other misconduct."[41] The court further held that the defendant's misconduct prevented the plaintiff from fully and fairly presenting her case because disclosure "would have made a difference in the way plaintiff's counsel approached the case or prepared for trial."[42] The court therefore concluded that the district court abused its discretion by denying the plaintiff's rule 60(b)(3) motion.

The same principle applies to deliberately concealing the existence of related lawsuits. In _Summers v. Howard University_,[43] several employees filed suit in federal court, alleging that the university had failed to properly compensate them. Shortly thereafter, the plaintiffs filed an

---

[39] _Id._ at 66.

[40] 573 F.2d 1332, 1342 (5th Cir. 1978).

[41] _Id._ at 1341.

[42] _Id._ at 1342.

[43] 374 F.3d 1188, 1190-95 (D.C. Cir. 2004).

identical suit in state court, but they took deliberate actions to prevent the university from discovering the state suit. For example, the employees did not serve the university with the state complaint and requested extensions of time from the state court, representing that the extensions were unopposed. The university did not learn of the state court suit until after it had entered into a settlement agreement in the federal case. Upon discovering the existence of the state suit, the university moved for relief from the judgment associated with the federal settlement agreement, relying on rule 60(b)(3). The D.C. Circuit held that the plaintiffs' "failure to supplement their interrogatory responses to disclose the existence of [the state suit], coupled with their affirmative efforts to prevent notice of the suit from being given" constituted misconduct for purposes of rule 60(b)(3).[44]

Those cases and others[45] make plain that a party cannot obtain a judgment through fraud, misrepresentation, or other misconduct and expect that judgment to withstand scrutiny. If the Court enforces the City's rule 68 offer of judgment, the judgment based on the offer will have resulted from precisely the type of conduct that rule 60(b) addresses and would have to be set aside. In *Colonial Penn Insurance Co.*, the Fourth Circuit reasoned that a court has "inherent

---

[44] *Id.* at 1193. The *Summers* court ultimately found that because the state suit was dismissed soon thereafter, the university had suffered no prejudice — unlike the City here — and thus no relief was warranted under rule 60(b)(3). Like the plaintiffs in *Summers*, Lubke intentionally failed to disclose the existence of a related proceeding, even though he was under an obligation to do so.

[45] *See e.g.*, *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1206 (Fed. Cir. 2005) (where plaintiff patentee failed to disclose relevant patent assignment and licensing agreement, and such failure prevented defendants from fully and fairly presenting their case, district court properly granted relief under rule 60(b)(3)); *Abrahamsen v. Trans-State Express*, 92 F.3d 425, 429 (6th Cir. 1996) (holding that rule 60(b)(3) relief was proper because party failed to disclose relevant information during discovery and counsel allowed witness to perjure himself before the court); *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923-25 (1st Cir. 1988) (discussing party's rule 60(b)(3) motion and noting that "where discovery material is deliberately suppressed, its absence can be presumed to have inhibited the unearthing of further admissible evidence adverse to the withholder, that is, to have substantially interfered with the aggrieved party's trial preparation."); *MMAR Group, Inc. v. Dow Jones & Co.*, 187 F.R.D. 282, 292 (S.D. Tex. 1999) (holding that plaintiff that withheld evidence but made statements to the court and the defendants that it had been forthcoming in producing such evidence engaged in rule 60(b)(3) misconduct).

supervisory power to revoke an offer of settlement made pursuant to rule 68 when and if such offer is procured by the offeree's fraud, especially fraud upon the fairness and justice of the court's own processes."[46]   Following that approach this Court should simply hold that the offer was not validly accepted or that it may be revoked.   Whatever the terminology, the offer should not be enforced.

## CONCLUSION

For the reasons stated, the Court should dismiss the trustee's motion to enforce the rule 68 offer of judgment as a violation of the mandate rule or, alternatively, deny it.

---

[46] *Colonial Penn Ins. Co.*, 887 F.2d at 1240.

Dated:  April 18, 2007

Respectfully submitted,

THOMPSON & KNIGHT LLP


  /s/  Bryan P. Neal
Bryan P. Neal, Attorney
State Bar No. 00788106
Frank Waite
State Bar No. 20667300
THOMPSON & KNIGHT LLP
1700 Pacific Avenue, Suite 3300
Dallas, Texas  75201
Telephone:  (214) 969-1700
Facsimile:   (214) 969-1751

Michael A. McConnell
State Bar No. 13447300
Kelly Hart & Hallman LLP
201 Main St., Suite 2500
Fort Worth, Texas 76102
Telephone:  (817) 878-3569
Facsimile:   (817) 878-9280
Email:  michael.mcconnell@khh.com

Denise Wilkerson
State Bar No. 20534100
Assistant City Attorney
City of Arlington
Post Office Box 231
Arlington, Texas 76004-0231
Telephone:  817-459-6878
Facsimile:   817-459-6897

ATTORNEYS FOR CITY OF ARLINGTON

## <u>CERTIFICATE OF ELECTRONIC FILING</u>

The undersigned hereby certifies, pursuant to Rule 8 of Miscellaneous Order 61, that this document has been filed by electronic means.

<u>    /s/  Bryan P. Neal                              </u>
Bryan P. Neal

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Rule 9 of the Court's Miscellaneous Order 61 of the Notice of Electronic Filing automatically generated by this Court's ECF system constitutes service of this document.

<u> /s/  Bryan P. Neal                              </u>
Bryan P. Neal

015983 000005 DALLAS 2173550.1

18