# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| DIANE G. REED | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION |
| | § | |
| v. | § | NO. 4:02- CV-188-Y |
| | § | |
| CITY OF ARLINGTON, et. al. | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO ENFORCE RULE 68 OFFER OF JUDGMENT AND SUPPORTING BRIEF

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**COMES NOW**, Plaintiff, Diane G. Reed, Trustee of the Chapter 7 Bankruptcy Estate of Kim Lubke, real party in interest and plaintiff herein, files this Reply to Defendant's Response to Plaintiff's Motion to Enforce Rule 68 Offer of Judgment and Supporting Brief as follows:

# TABLE OF CONTENTS

I.     Summary ...................................................................................................1

II.    Objections ...............................................................................................1

III.   Background ..............................................................................................2

IV.    Argument and Authority ........................................................................4

       1.   The "Mandate Rule" does not preclude enforcement of the City's
            Rule 68 Offer of Judgment........................................................................4

       2.   Reed had standing as the real party in interest to accept the Rule 68 offer......7

       3.   Rule 60(b)(3) provides no relief to the City ....................................10

V.     Conclusion ..............................................................................................16

## TABLE OF AUTHORITIES

### CASES

*Colonial Penn Ins. Co. v. Coil,*
    887 F.2d 1236 (4th Cir.1989) ................................................................. 10, 11

*Conway v. Chemical Leaman Tank Lines, Inc.,*
    644 F.2d 1059 (5th Cir. 1981) .............................................................. 5

*Crowe v. Smith,*
    261 F.3d 558 (5th Cir.2001) .................................................................5, 6

*In re Cundiff,*
    227 B.R. 476 (6th Cir. BAP 1998).......................................................... 8

*Deupree v. Levinson*
    186 F.2d 297 (6th Cir. 1950) ............................................................... 9

*Diaz v. Methodist Hosp.,*
    46 F.3d 492 (5th Cir.1995) ................................................................. 12

*DiPirro v. United States,*
    43 F.Supp.2d 327 (W.D.N.Y.1999)
    *amended by*, 189 F.R.D. 60 (W.D.N.Y.1999) ..................................... 16

*In re Educators Group Health Trust,*
    25 F.3d 1281 (5th Cir.1994) ................................................................ 8

*Farrell Construction Co. v. Jefferson Parish, La.*
    896 F.2d 136 (5th Cir.1990) ............................................................... 7

*Gordon v. Gouline,*
    81 F.3d 235 (D.C.Cir.1996) ............................................................... 9

*Gulf Coast Building and Supply Co. v. Local No. 480*
    460 F.2d 105 (5th Cir.1972) ............................................................... 4

*Henderson v. Stadler,*
    407 F.3d 351 (5th Cir.2005) ............................................................... 7

*Herrington v. County of Sonoma*
    12 F.3d 901 (9th Cir.1993) ................................................................. 6

*Hester v. International Union of Operating Engrs.,*
    941 F.2d 1574 (11th Cir.1991) ............................................................ 6

*Kepache v. City of San Antonio*
    304 F.3d 493 (5th Cir.2002) ................................................................. 4

*Lubke v. City of Arlington,*
    455 F.3d 489 (5th Cir.2006) ............................................................. 2, 5

*Lubke v. City of Arlington,*
    472 F.3d 571 (5th Cir.2006) ................................................................. 5

*Marek v. Chesny*
    473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985)............................... 5, 14

*Midwestern Indemnity Co. v. Laikin*
    119 F. Supp.2d 831 (S.D. Ind.2000) .................................................... 8, 9

*In re Miller*
    347 B.R. 48 (Bankr.S.D. Tex.2006) ....................................................... 10

*Mindlin v. Drexel Burnham Lambert Group,*
    160 B.R. 508 (S.D.N.Y. 1993) ................................................................. 8

*Ramming v. Natural Gas Pipeline Co.,*
    390 F.3d 366 (5th Cir.2004) ................................................................. 13

*Richardson v. National R.R. Passenger Corp.,*
    49 F.3d 760 (D.C. Cir.1995) ...................................................................14

*Rozier v. Ford Motor Co.*
    573 F.2d 1232 (5th Cir.1978) ............................................................... 16

*Summers v. Howard University*
    374 F.3d 1188 (D.C. Cir.2004) .............................................................. 16

*U.S. v. Lee*
    358 F.3d 315 (5th Cir.2004) ................................................................... 4

*Virzi v. Grand Trunk Warehouse and Cold Storage Co.*
    571 F. Supp. 507 (Mich. 1983)............................................................... 16

*In re Watson*
    2004 WL 3244420, slip. Op. (Bankr. W.D. La. Sept. 29, 2004) ............ 13

*Wieburg v. GTE Southwest, Inc.*
    272 F.3d 302 (5th Cir.2001) ..........................................................7, 8, 9

*Willemain v. Kivitz*
          764 F.2d 1019 (4th Cir. 1985) ............................................................................ 13

**STATUTES AND RULES**

11 U.S.C. §323(a). ................................................................................................................. 8

11 U.S.C. §323(b). ................................................................................................................. 8

11 U.S.C. §521 ....................................................................................................................... 8

11 U.S.C. §541 ....................................................................................................................... 8

11 U.S.C. §554 ....................................................................................................................... 8

29 U.S.C. §2617 ..................................................................................................................... 2

Fed. R. Bankr. P. 6009 ........................................................................................................... 8

Fed. R. Bankr. P. 9019 ......................................................................................................... 13

Fed. R. Civil P. 17 .................................................................................................................. 7

Fed. R. Civil P. 25(c) ............................................................................................................. 9

Fed. R. Civil P. 60 ..................................................................................................... 10, *passim*

Fed. R. Civil P. 68 ....................................................................................................... 1, *passim*

**SECONDARY AUTHORITIES**

Black's Law Dictionary 670 (7th ed. 1999) ........................................................................ 11

## I. Summary[1]

On April 15, 2004, the jury determined that the City of Arlington ("City") violated the Family and Medical Leave Act ("FMLA"). On May 13, 2004, the Court awarded over a million dollars in damages against the City. On June 30, 2006, the Fifth Circuit denied the City's appeal as to liability and remanded the case to the district court to recalculate damages. Recognizing that it would still be liable for damages in excess of half a million dollars, the City made an offer of judgment be taken against it. The party entitled to accept that offer did so.

The Fifth Circuit's mandate does not prohibit this Court from considering and enforcing the City's Rule 68 Offer of Judgment. Further, the City fails to show how Lubke's failure to list the judgment on his bankruptcy schedules has prevented the City from fully and fairly presenting its case. Unfortunately, the City has turned this case into a mud-slinging event. This Court should bypass the City's attacks upon Reed, Levick and Hurlbut, reject the City's argument in response, and enforce the City's Rule 68 Offer of Judgment.

## II. Objections

Plaintiff objects to the Declaration of Frank Waite as follows:

1.      Plaintiff objects to the 1st sentence of paragraph 4 as speculative and self-serving.

2.      Plaintiff objects to the 2nd sentence of paragraph 4 as irrelevant. The offer of judgment was irrevocable.

---

[1] All references to "App." herein refer to the appendix filed with Defendant's Response to Plaintiff's Motion for Enforce Rule 68 Offer of Judgment ("Defendant's Response"). All references to "District Court Docket No." relate to the docket in Civil Action No. 4:02-CV-0188-Y. All references to "Bankruptcy Court Docket No." relate to the docket entries in Bankruptcy Case No. 05-36677-bjh7, also attached as App. 41-46.

3.      Plaintiff objects to the 3rd sentence of paragraph 4 as Mr. Waite purports to state a legal and/or factual conclusion.

4.      Plaintiff objects to the 4th sentence of paragraph 4 as Mr. Waite purports to state a legal and/or factual conclusion. Plaintiff further objects as this statement is irrelevant to the claims made in this court. Plaintiff further objects as Mr. Waite mischaracterizes the law as there is no "maximum claim" or cap applicable to this case.

### III. Background

On April 15, 2004, the jury returned a verdict against the City for violating the FMLA, and awarding damages to plaintiff in the amount of approximately $395,000.[2] On May 13, 2004, the Court entered a Final Judgment against the City, and awarded plaintiff damages, attorney's fees and costs in excess of $1 million.[3]   On September 29, 2004, the City filed its Notice of Appeal.[4]

On June 30, 2006, the Fifth Circuit issued its opinion affirming in part (as to the City's liability) and reversing in part (on damages).[5]  In light of the Fifth Circuit's ruling, the City made an offer of judgment under Rule 68 on July 31, 2006.[6]  Unbeknownst to Lubke's attorney, Roger Hurlbut, Lubke and his wife filed for bankruptcy in June 2005. The Lubkes received their bankruptcy discharge on September 28, 2005.[7]  Hurlbut

---

[2] District Court Docket No. 121.
[3] District Court Docket No. 136.
[4] District Court Docket No. 160.
[5] *Lubke v. City of Arlington*, 455 F.3d 489, 493 (5th Cir.2006); District Court Docket No. 180.
[6] District Court Docket No. 174; App. 1-4 (After the Fifth Circuit's June 30, 2006 decision, the City's best day is a judgment in an amount no less than $504,981.96 based on the figures contained in the City's Motion to Amend or Alter the Judgment, District Court Docket No. 140. This amount does not include an award of liquidated damages mandated by 29 U.S.C. §2617(a)(1)(A)(iii). The Fifth Circuit did not remand for reconsideration of attorney's fees or costs. But, the City's offset argument lacks merit and no offset should be allowed should the Court reach that issue).
[7] Bankruptcy Court Docket No. 6; App. 42.

2

learned of the bankruptcy proceeding in August 2006, after the City served its offer of judgment.[8]  Hurlbut, unsure how to proceed at that point, determined that Reed had been the Chapter 7 trustee for the Lubke's bankruptcy estate, and contacted her attorney, Larry Levick.[9]  Reed had no knowledge of the bankruptcy proceeding until August 2006, after Hurlbut contacted Levick.[10]  On August 8, 2006, the City filed its motion for rehearing in the Fifth Circuit.[11]

Upon learning of the judgment against the City, Reed immediately filed a motion to reopen the bankruptcy proceedings on August 8, 2006.[12]  On August 10, 2006, the bankruptcy court granted Reed's motion to reopen the case.[13]  On that same date, Reed filed her Motion for Substitution of Real Party in Interest for Plaintiff.[14]  Reed also served upon the City notice of acceptance of the Rule 68 offer of Judgment.[15]

On August 14, 2006, after receiving the notice of acceptance of the Rule 68 offer of judgment, the City filed its Motion for Leave to Supplement the Petition for Rehearing.[16]  The Fifth Circuit ordered the parties and attorneys to appear for hearing in New Orleans.[17]  The Fifth Circuit instructed that any brief to be filed had to be submitted by Hurlbut as Reed's motion to substitute filed in the Fifth Circuit had not yet been granted.[18]  On September 6, 2006, the Fifth Circuit held a hearing, but did not rule on the petition for rehearing at that time.

---

[8] App. 75.
[9] App. 82-83.
[10] App. 73, 75, 82.
[11] App. 16.
[12] Bankruptcy Court Dock No. 11; App. 43.
[13] Bankruptcy Court Docket No. 12; App. 43.
[14] District Court Docket No. 173.
[15] District Court Docket No. 174; App. 5-10.
[16] App. 16.
[17] App. 33, 79.
[18] App. 81.

On December 5, 2006, the bankruptcy court held a hearing on an agreed motion to revoke the Lubke's discharge.[19]   The Court entered an Agreed Judgment revoking Lubke's bankruptcy discharge.[20]   On December 19, 2006, the Fifth Circuit denied the City's Motion to File Supplemental Petition for Rehearing, and denied the City's petition for rehearing.[21]   The Fifth Circuit neither required nor prohibited this Court from considering the City's Rule 68 Offer of Judgment.

## IV. Argument and Authority

1.   The "Mandate Rule" does not preclude enforcement of the City's Rule 68 Offer of Judgment.

The mandate rule simply embodies the proposition that a district court is not free to deviate from the appellate court's mandate."[22]   In other words, "a lower court on remand must implement both the letter and the spirit of the [appellate court's] mandate, and may not disregard the explicit directives of that court."[23]   "Absent exceptional circumstances, the mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court."[24]   A mandate is completely controlling as to all matters within its compass, but on remand the trial court is free to pass upon any issue which was not expressly or impliedly disposed of on appeal.[25]

The Rule 68 issue was not disposed of on appeal to the Fifth Circuit.  No record was developed in the trial court for the Fifth Circuit to consider.  The Fifth Circuit did not admit any evidence on the issue at the hearing on September 6, 2006.  While the Fifth

---

[19] App. 70-91.
[20] App. 67-69.
[21] App. 18.
[22] *Kepache v. City of San Antonio*, 304 F.3d 493, 496 (5th Cir.2002).
[23] *Id.*
[24] *U.S. v. Lee*, 358 F.3d 315, 321 (5th Cir.2004).
[25] *Gulf Coast Building and Supply Co. v. Local No. 480*, 460 F.2d 105, 107 (5th Cir.1972).

4

Circuit indicated in its August 29, 2006 letter to the parties,[26] there is no evidence that the Fifth Circuit considered or decided the issue. The doctrine of the law of the case applies only to issues decided, not to all those presented but left unanswered.[27]

The City argues that the Rule 68 Offer of Judgment was expressly or impliedly decided by the appellate court such that this district court cannot consider it. The City's argument fails. Clearly, the Fifth Circuit did not expressly decide the Rule 68 issue.[28] The City failed to show that the Fifth Circuit implicitly considered the Rule 68 Offer of Judgment and refused to enforce it. In fact, the Fifth Circuit did not have the power to enter the judgment under Rule 68. It is the province of the district court to enter the judgment under Rule 68.

The City contends that it is beyond the letter and spirit of the remand to enforce the parties' agreement to settle this case. The Fifth Circuit's mandate neither prohibited nor required the district court to consider the Rule 68 issue. The purpose of Rule 68 is to encourage settlement and avoid litigation.[29] Rule 68 allows for the parties in a suit to evaluate the costs and risks of litigation, and to balance that against the likelihood of success after trial on the merits.[30] The purpose of Rule 68 would be defeated if the district court were not allowed to enforce the City's offer of judgment.

The City's reliance on *Crowe*[31] is misplaced for the point that if the appellate court did not explicitly address an issue, then it was implicitly resolved thereby precluding reconsideration on remand. In *Crowe*, "the district court in its original

---

[26] App. 33.
[27] *Conway v. Chemical Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1062 (5th Cir.1981).
[28] *Lubke v. City of Arlington*, 455 F.3d 489 (5th Cir.2006); Lubke v. City of Arlington, 472 F.3d 571 (5th Cir.2006).
[29] *Marek v. Chesny*, 473 U.S. 1, 5 (1985).
[30] *Id.*
[31] *Crowe v. Smith*, 261 F.3d 558 (5th Cir.2001).

opinion had already held that the attorney's conduct was sanctionable."[32]   The Court of

Appeal rejected this holding when that court vacated and reversed the original imposition

of sanctions, finding no basis on which to affirm the district court.[33]   Unlike *Crowe,* the

district court in this case had not yet considered the issue in dispute – the Rule 68 offer of

judgment – before the Fifth Circuit rendered its decision and entered its mandate.   If the

district court has not considered the Rule 68 offer of judgment, it could not have been

decided by necessary implication by the Fifth Circuit.   The argument would "impose on a

court of appeals the necessity of considering many arguments not yet considered by the

district court, or even argued or briefed to the appellate court, and would expand the

doctrine of law of the case far beyond its roots in the values of 'efficiency, finality, and

obedience within the judicial system.'"[34]

The City argues that the District Court could not enforce the Rule 68 Offer of

Judgment because it was not specifically directed by the Court of Appeal.   Certainly, the

City does not believe courts are prohibited from considering a Rule 68 offer of judgment

after all appellate mandates based on the City's offer of judgment made after Fifth Circuit

decision dated June 30, 2006 remanding solely for a consideration of damages – an offer

made 31 days after that mandate.[35]   The Ninth Circuit applied the effect of a Rule 68

offer after a remand on the issue of damages in *Herrington v. County of Sonoma, and*

determined that plaintiffs were precluded by Rule 68 from receiving the full amount of

their attorney's fees as a result of their failure to accept the Rule 68 offer of judgment.[36]

If Reed had not accepted the City's Rule 68 offer of judgment, there is little doubt the

---

[32] Crowe, 261 F.3d at 563.
[33] *Id.*.
[34] *Hester v. International Union of Operating Engrs.*, 941 F.2d 1574, n. 9 (11th Cir.1991).
[35] App. 15.
[36] *Herrington v. County of Sonoma*, 12 F.3d 901, 903 (9th Cir.1993).

City would be making the same argument made by the County in *Herrington*. In that case, the City assuredly would be seeking to limit the amount that could be recovered under Rule 68 if the recalculation of damages was substantially less than the City's offer of judgment.

Finally, in reliance upon *Henderson*,[37] the City argues that when the Fifth Circuit omits an issue by mistake, the district court is barred from considering the issue under the mandate rule. Yet, there is no indication in that the Rule 68 issue was considered and omitted by mistake.

2.    Reed had standing as the real party in interest to accept the Rule 68 offer.

Every action shall be prosecuted in the name of the real party in interest.[38] The real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery.[39] The purpose of this provision "is to assure a defendant that a judgment will be final and that res judicata will protect it from having to twice defend an action, once against an ultimate beneficiary of a right and then against the actual holder of the substantive right."[40] The City's offer of judgment was made to the adverse party to assure a final judgment and protect it from future litigation brought by Lubke or anyone else pursuing the FMLA claims at issue. Under Rule 68, the City made "an offer to allow judgment be taken against [it]." An offer made in the context of Rule 68 could only be made to the real party in interest. If the offer were made to someone other than the real party in interest,

---

[37] *Henderson v. Stadler*, 407 F.3d 351, 354 (5th Cir.2005).
[38] *Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 306 (5th Cir.2001) *citing* Fed.R.Civ.P. 17.
[39] *Farrell Construction Co. v. Jefferson Parish, La.*, 896 F.2d 136, 140 (5th Cir.1990).
[40] *Id.* at 142.

the offer would not settle the claims in dispute and therefore would defeat the purpose of Rule 68.

Because the judgment against the City was property of the estate, the Trustee had, at all times, exclusive standing to prosecute this case, defend the appeal and accept the offer of judgment. As specifically provided by the bankruptcy code, "the trustee in a case under this title is the representative of the estate."[41] "The trustee in a case under this title has the capacity to sue and be sued."[42] The trustee is authorized to prosecute, with or without court approval, any action on behalf of the estate before any tribunal.[43]

Property of the estate that is not scheduled or otherwise administered by the time the case closes remains property of the estate indefinitely.[44] Accordingly, the judgment against the City of Arlington and the attendant rights thereto, including the right to execute on the judgment, the right to defend the appeal, and the right to accept the offer of judgment, has been property of the estate from the petition date to the present.[45] A judgment obtained pre-petition is property of the Chapter 7 bankruptcy estate.[46]

Reed always had standing in the instant proceeding regardless of the fact that she, as trustee, was unaware of the judgment or the appeal until the offer of judgment was made. As such, Reed may step into the proceedings as they exist and accept the offer of judgment. In *Midwestern Indemnity Co. v. Laikin*, the District Court for the Southern

---

[41] 11 U.S.C. §323(a).
[42] 11 U.S.C. §323(b); *Wieburg v. GTE Southwest, Inc. (In re Wieburg)*, 272 F.3d 302, 306 (5th Cir. 2001). *See also In re Educators Group Health Trust*, 25 F.3d 1281 (5th Cir. 1994), (citations omitted); *In re Cundiff*, 227 B.R. 476, 479 (6th Cir. BAP 1998), *citing* 11 U.S.C. § 554(d), *Mindlin v. Drexel Burnham Lambert Group*, 160 B.R. 508, 514 (S.D.N.Y. 1993) ("By operation of 11 U.S.C. § 554(c) and (d), any asset not scheduled pursuant to 11 U.S.C. §521(1) remains property of the estate, and the debtor loses all rights to enforce it under his own name").
[43] Fed.R.Bankr.P. 6009.
[44] 11 U.S.C. §554(d).
[45] 11 U.S.C. §554(d).
[46] 11 U.S.C. §541(a)(1) (property of the estate comprises all legal and equitable interests of the debtor on the petition date "wherever located and by whomever held").

8

District of Indiana found that the right of the bankruptcy trustee to pursue litigation instituted by the debtors pre-petition, but which the debtors had not listed on their bankruptcy schedules, related back to the original complaint.[47]  The decision [has] the effect of prohibiting the tortfeasors from profiting at the creditors' expense merely because the debtors had erroneously failed to list the tort claims as assets.[48]  Reed, as trustee, obtained standing to prosecute this claim and accept any offer of judgment the moment the bankruptcy petition was filed.

Federal Rule of Civil Procedure 25(c) provides further support for Reed's substantive right to step into the current proceedings as they exist at this time and accept the offer of judgment because it permits an action to continue unabated when an interest in a lawsuit changes hands, rather than requiring the initiation of an entirely new lawsuit. As noted in a footnote by the City, Rule 68 permits "an offer to an 'adverse party' to be accepted by the 'adverse party.'"  In this case, the City offered that its adversary take a judgment against it, and the adverse party accepted the offer.

Finally, the City claims "another 'authority' problem" exists in that the bankruptcy court must approve acceptance of the offer.  This issue was considered in *Gordon v. Gouline*.[49]  The court in *Gordon* clearly stated that the conditions of Rule 68 are fulfilled if the trustee accepts the offer within 10 days. Regardless, the City acknowledges that this issue is not relevant to the Court's consideration.

---

[47] 119 F.Supp.2d 831, 855 (S.D. Ind. 2000) (citations omitted). *See also Deupree v. Levinson*, 186 F.2d 297, 302 (6th Cir. 1950) ("... substitution...relates back to the commencement of the action regardless of the statute of limitations").  See also *Wieburg*, 272 F.3d at 303, 308-09 (district court abused its discretion in dismissing debtor's complaint for lack of standing "without explaining why ratification by, or joinder of, the Trustee were not appropriate alternatives.")
[48] Laikin, 119 F.Supp.2d at 855.
[49] *Gordon v. Gouline*, 81 F.3d 235, 236-237 (D.C. Cir.1996).

3.     Rule 60(b)(3) provides no relief to the City.

The City seeks relief from its city council-approved Rule 68 offer of judgment under Rule 60(b)(3). This matter is not ripe until after the Court actually enters the judgment under Rule 68. The City argues that the Court need not enter the judgment if it were to follow *Colonial Penn*.[50] The ruling in *Colonial Penn* is not applicable to this case as the facts are far from the same.

In *Colonial Penn*, a fire insurer sought to revoke an offer of judgment that resulted in a settlement favorable to the insureds. The Ninth Circuit noted that the facts of that case were unusual.[51] The act complained of in this case, the omission of an asset from a bankruptcy schedule, is not so unusual.[52] In *Colonial Penn*, the home of Willard and Betty Coil was severely damaged by a fire. The Coils' insurer, Colonial Penn, filed a declaratory judgment action claiming that the Coils were not entitled to recover under their insurance policy.[53] After entering into settlement negotiations with the Coils, Colonial Penn made an offer of judgment.[54] The Coils agreed to accept the offer of judgment, but the letter drafted by their lawyer was not immediately transmitted to Colonial Penn.[55] In the interim, Colonial Penn learned that Willard Coil had intentionally started the fire. Colonial Penn notified the Coils' lawyer that the offer of judgment was revoked.[56] Willard Coil was arrested that same date. The next day, the Coils' lawyer sent notice of acceptance of the offer of judgment. Less than three months later, the Coils

---

[50] *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236 (4th Cir.1989); Defendants' Response, p. 15-16.
[51] *Id.* at 1237.
[52] *In re Miller*, 347 B.R. 48, 53 (Bankr.S.D. Tex. 2006).
[53] *Colonial Penn*, 887 F.2d at 1237.
[54] *Id.* at 1237.
[55] *Id.* at 1238.
[56] *Id.*

pled guilty to accessory after the fact to commit arson.[57]   "The Coils, while seeking to enforce a judgment against their insurer for the burning of their house, confessed in their criminal trial to complicity in the burning of the house."[58]   The Coils committed fraudulent conduct before the lawsuit was filed and before any judgment was entered.

Unlike *Colonial Penn*, the purported fraudulent conduct did not take place before this suit was filed.  The purported fraudulent conduct in this case did not give rise to the claims as it did in *Colonial Penn*.  The purported fraudulent conduct did not occur before trial or the Court entered its judgment on May 13, 2004.  The fraudulent conduct alleged by the City occurred over a year after the Court entered judgment in this case.  Therefore, the City's reliance on *Colonial Penn* is misplaced.

The City argues that the settlement offer was procured by fraud.  Fraud is "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment."[59]   The City has made no showing that Lubke omitted the judgment from his bankruptcy schedules to induce the City to make the offer of judgment.  What need was there to procure a settlement offer through fraud when the plaintiff had in hand a judgment in excess of a million dollars?  Add to the circumstances that liability had just been confirmed by the Fifth Circuit, the City's argument makes no practical or legal sense.  In fact, it was Lubke, and subsequently Reed, that voluntarily came forward to disclose the bankruptcy before the offer of judgment was accepted.  Any fraud committee by Lubke was committed against his creditors at the time of his bankruptcy, not against the City.  Certainly, Reed did not commit any fraud against the City.

---

[57] *Id.* at 1239.
[58] *Id.* at 1240.
[59] Black's Law Dictionary 670 (7th ed.1999).

A Rule 60(b)(3) assertion must be proved by clear and convincing evidence, and the conduct complained of must be such as to prevent the losing party from fully and fairly presenting its case.[60] "Even if we accept as true Appellant's assertions of perjury, we would only set aside the decision of the trial court if we found that Appellee's actions foreclosed the possibility that Appellant could "fully and fairly present her case.""[61] The decision to relieve a party from a final judgment is within the sound discretion of the trial court.[62] Unquestionably, the original judgment was not obtained by fraud as the so-called fraudulent act occurred over a year after the trial in this case. The City fails to show how Lubke's failure to include the judgment on his bankruptcy schedules prevents it from "fully and fairly presenting its case at trial." The Fifth Circuit affirmed the City's liability in this case, and remanded for the district court to recalculate damages. The City represented to the Court at the March 13, 2007 status conference that no additional discovery was needed. Lubke's omission of the judgment from his bankruptcy schedules has not prevented the City from fully and fairly presenting its case.

The City claims that it has been prejudiced by this misconduct.[63] The City claims that it "could have settled" with the trustee "thus saving the City substantial amounts of attorney's fees."[64] The City fails to show how it has been prejudiced. The City merely speculates that it could have settled with the trustee without providing any evidence of the amount it would have settled for. The City stopped short of speculating what amount the trustee would have settled for.

---

[60] *Diaz v. Methodist Hosp.*, 46 F.3d 492, 496 (5th Cir.1995).
[61] *Id.* at 497.
[62] *Id.* at 496.
[63] Defendant's Response, p. 9.
[64] *Id.*

The City argues that had Lubke disclosed the judgment when he filed his bankruptcy petition, then "perhaps the City and the trustee could have settled" (underlining added). The City ignores that fact that the judgment exceeds the amount of claims identified in Lubke's bankruptcy schedules such that he would have standing to object to any settlement between Reed and the City. A debtor in a solvent case has a pecuniary interest and therefore may object to a settlement.[65] Further, Hurlbut – as the largest creditor of Lubke's bankruptcy estate – has standing to object to a settlement between Reed and the City regardless of whether the estate is solvent.[66] The City fails to take into account other factors that would affect Reed's decision to settle with the City, including administrative fees and taxes. The City's claim that it could have settled with the trustee for some lesser amount is just unfounded speculation.

The City stoops to accuse Reed – a trustee appointed by the United States Trustee's office – of "perpetuat[ing] Lubke's falsehood." The City fails to state how Reed perpetuated Lubke's failure to disclose the judgment. The City makes the wholly unsubstantiated allegation that Reed's actions were undertaken based on the presumption that the City would have withdrawn its offer of judgment had it learned of the bankruptcy. Yet, an offer of judgment under Rule 68 is irrevocable within the 10 day period.[67]

The City condemns Hurlbut, Reed and Levick for failing to immediately call to advise of the bankruptcy proceedings. Hurlbut brought the issue to Levick on about August 2, 2006. Soon thereafter, Levick brought the issue to Reed. They did not hide

---

[65] *In re Watson*, 2004 WL 3244420, slip. Op. (Bankr. W.D. La. Sept 29, 2004); *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir.1985).
[66] Fed.R.Bankr.P. 9019.
[67] *Ramming v. Natural Gas Pipeline Co.*, 390 F.3d 366, 370 (5th Cir.2004).

the bankruptcy as the City asserts. Instead, Reed filed a motion to reopen the bankruptcy proceedings and to be re-appointed as trustee.[68] She filed a motion to substitute as the real party in interest in this case.[69] She brought this issue to the attention of the City and this Court shortly after she learned of Lubke's judgment against the City and after the offer of judgment.[70] These motions were filed in the course of about one day. With the assistance of Hurlbut, Lubke filed amended schedules after the bankruptcy was reopened listing the judgment.[71] These actions were taken by Hurlbut, Reed and Levick of their own volition, not in violation of any ethical duties. Clearly, they did not deceive the City as to the existence of the bankruptcy proceedings.

The City fails to consider that Hurlbut, Reed and Levick were considering the issues. These events occurred in a very short time frame. Reed was obligated to decide whether to accept the offer of judgment by August 10:

> A Rule 68 offer is simply not revocable during the 10-day period. An offer of judgment under the Rule imposes certain consequences that can be costly for the plaintiff who declines the offer. The Rule is thus designed to put significant pressure on the plaintiff to think hard about the likely value of it is claim as compared to the defendant's offer. In return, the plaintiff, as we understand the scheme, is guaranteed 10 days to ponder the matter (as though the plaintiff had paid for a 10-day option).[72]

At the time Reed learned of the offer, she had less than the 10-day period to decide. Perhaps she was "think[ing] very hard whether continued litigation [would be] worthwhile."[73] It is apparent that Reed determined that continued litigation is not worthwhile and sought an end. It is equally apparent that the City would rather continue

---

[68] App. 43.
[69] District Court Docket No. 173.
[70] App. 5.
[71] App. 44.
[72] *Richardson v. National R.R. Passenger Corp.*, 49 F.3d 760, 765 (D.C. Cir.1995).
[73] *Marek v. Chesny*, 473 U.S. 1, 6, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985).

14

with litigation and increase the costs thereof, as indicated by their addition of another law firm to the mix.

The City steps beyond the bounds of decency and now attacks every lawyer involved on behalf of the plaintiff. Hurlbut, Reed and Levick did not violate Rules 3.3 and 4.1 of the Model Rules of Professional Conduct. The City does not even assert that they made an affirmative misrepresentation. Instead, the City claims that these lawyers "fail[ed] to make a disclosure" – that Lubke was involved in a bankruptcy proceeding. Yet, their disclosure of the bankruptcy, not the omission thereof, brought the issue to the City's attention in the first place. The truth of the matter is that Hurlbut, Levick and Reed took the appropriate action under the circumstances. Perhaps, the unethical lawyer would have told Hurlbut to accept the offer of judgment, receive the money from the City, and then pay that money to the trustee. In that scenario, it is unlikely that the City would have ever learned of the bankruptcy. The City's absurd accusations go too far.

The City considers it noteworthy that Hurlbut filed an answer on behalf of Lubke in the bankruptcy adversary proceeding when he also had filed a brief on behalf of Reed as Plaintiff in the Fifth Circuit. Levick and the firm of Gerard Singer Levick sought to appear before the Fifth Circuit.[74] The Fifth Circuit did not allow Gerard Singer Levick to appear at the time that Plaintiff's briefs were due before the Fifth Circuit, and requested that Hurlbut, rather than the trustee, file the response. On September 15, 2006, Hurlbut gave notice that he was withdrawing his application to be approved as special counsel for Reed.[75] Afterward, on October 5, 2006, Hurlbut filed an answer on behalf of Lubke in the bankruptcy adversary proceeding. The City's attempt to portray Hurlbut as

---

[74] App. 17.
[75] App. 17.

improperly wearing two hats at that point is misleading as a result of the City's omission of these facts.

The line of cases cited by the City that a lawyer has a duty to disclose the death of the plaintiff do not apply here. Had Hurlbut not disclosed the bankruptcy, accepted the offer of judgment, and then tried to enforce the offer of judgment, those cases might be relevant. Those are not facts of this case. *Virzi* is further distinguished by the fact that Reed moved to substitute in as the real party in interest under Rule 25(c).[76]

The City wrongfully relies upon *DiPirro*,[77] *Rozier*,[78] and *Summers*.[79] Plaintiff has not given inconsistent testimony in two proceedings. *DiPirro* does not apply. Plaintiff did not withhold any information requested in discovery by the City, nor could it have disclosed the bankruptcy at any time before trial. *Rozier* is inapposite. Plaintiff did not file an identical state court suit nor conceal any related lawsuits in the course of this suit. *Summers* is irrelevant.

## V. Conclusion

The Court is not prohibited from entering the Rule 68 judgment by the Fifth Circuit's mandate. Reed had the standing and authority to accept the City's Rule 68 Offer of Judgment. Rule 60(b)(3) provides no relief to the City as it cannot show how it would be prevented from fully and fairly presenting its case at trial. Accordingly, Plaintiff respectfully requests that the Court direct the clerk to enter judgment as specified in the Offer of Judgment, and set for hearing a determination of attorney's fees and other costs incurred by Plaintiff as specified in the Offer of Judgment.

---

[76] *Virzi v. Grand Trunk Warehouse and Cold Storage Co.*, 571 F.Supp. 507, 511 (Mich.1983).
[77] *DiPirro v. United States*, 43 F.Supp.2d 327 (W.D.N.Y. 1999) *amended by*, 189 F.R.D. 60 (W.D.N.Y. 1999).
[78] *Rozier v. Ford Motor Co.*, 573 F.2d 1232 (5th Cir.1978).
[79] *Summers v. Howard University*, 374 F.3d 1188 (D.C. Cir.2004).

Respectfully Submitted,

Gerard Singer Levick, P.C.


By:     s/ Todd A. Hoodenpyle
        Todd A. Hoodenpyle
        State Bar No. 00798265
        Gabrielle A. Hamm
        State Bar No. 24041047


        16200 Addison Road, Suite 140
        Addison, Texas  75001
        Tel. (972) 380-5533
        Fax (972) 380-5748

## CERTIFICATE OF SERVICE

On May 1, 2007, the foregoing document was served electronically via the Court's ECF system pursuant to Rule 9 of the Court's Miscellaneous Order 61 to all counsel of record.


                s/ Todd A. Hoodenpyle
                Todd A. Hoodenpyle