```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF TEXAS
                       FORT WORTH DIVISION

DIANE G. REED                    §
                                 §
VS.                              §   CIVIL ACTION NO. 4:02-CV-188-Y
                                 §
CITY OF ARLINGTON                §
```

## ORDER DENYING MOTION TO ENFORCE RULE 68 OFFER OF JUDGMENT

Plaintiff Diane Reed, the trustee of the Chapter 7 bankruptcy estate of former plaintiff Kim Lubke, has filed a motion requesting that the Court enforce an offer of judgment that was made by defendant City of Arlington ("the City") under Federal Rule of Civil Procedure 68 and timely accepted by her. The City opposes on grounds that the Court is without authority to grant Reed's motion under the "mandate rule," that Reed did not have the authority to accept the offer, and that Reed and Lubke's attorney engaged in fraud, misconduct, and unethical behavior. After review, the Court concludes that Reed's motion (doc. #194) should be DENIED.

I.  Factual Background

Kim Lubke was a twenty-two year veteran of the City of Arlington Fire Department when he was terminated on April 19, 2000. After exhausting his required administrative remedies, Lubke filed suit in state court against the City and other defendants alleging causes of action under the Fair Labor Standards Act ("FLSA") and the Family and Medical Leave Act ("FMLA"). This Court dismissed all of Lubke's FLSA claims and dismissed his FMLA claims against

all defendants except the City.

Following a ten-day trial, the jury determined that the City violated the FMLA.  As a result, judgment was awarded to Lubke in excess of one million dollars for lost wages and benefits, liquidated damages, attorney fees, and court costs.  The City appealed, and on June 30, 2006, the United States Court of Appeals for the Fifth Circuit affirmed in part and reversed in part the judgment of this Court.  *See Lubke v. City of Arlington,* 455 F.3d 489, 500 (5th Cir. 2006).  The court of appeals agreed that the City violated the FLMA but reversed the award of damages and remanded the case to this Court for further proceedings to recalculate damages.  *Id.*

Thereafter, but before the court of appeals issued its mandate and during the time either party could file a petition for panel rehearing, the parties (being the City and Lubke) entered into settlement negotiations.  Due to the potential of settlement, the parties sought and obtained from the court of appeals an extension through August 8, 2006, to file their petitions for rehearing.

On July 31, 2006, the City communicated an offer of judgment under Rule 68 to Lubke's attorney, Roger Hurlbut.  While discussing this offer with his client, Lubke informed Hurlbut that in June 2005 he had filed for Chapter 7 bankruptcy but had not listed the judgment from this Court on his schedule of assets.  Lubke disclosed that in September 2005 he had received a no-asset discharge

2

and that his bankruptcy was closed.

Hurlbut determined that Reed had been appointed trustee of the bankruptcy estate, and he immediately notified Reed of the judgment and the offer from the City through her attorney. Reed successfully convinced the bankruptcy court to reopen Lubke's bankruptcy case on August 10, 2006. On that same day, Reed sent the City her written acceptance of the City's offer of judgment under Rule 68, and filed a motion with this Court to substitute her for Lubke as the real party in interest.[1]

---

[1] The Court granted Reed's motion to substitute on August 14, 2006, before the court of appeals issued its mandate on December 22. This draws into question whether, at the time, the Court had jurisdiction to grant Reed's motion. Regardless, as will be further discussed in this footnote, under the bankruptcy code, the Court would have no choice but to grant Reed's motion once the mandate was issued. Thus, just to make clear, the Court today ratifies its order of August 14 granting Reed's motion to substitute as the real party in interest.

Reed also filed a motion before the court of appeals requesting that she be substituted as the real party in interest before that court. The court of appeals, however, denied her motion, and the correctness of that decision is in serious doubt. When Lubke commenced his Chapter 7 bankruptcy, a vested bankruptcy estate was automatically created. *See* 11 U.S.C. § 541(a). The contents of that estate is defined by statute and it included this Court's judgment as an asset. *See* 11 U.S.C. § 541(a)(1). Thus, on the date Lubke filed his Chapter 7 petition, he was divested of all interest in the judgment of this Court, and that interest vested in the bankruptcy estate.

In accordance with 11 U.S.C. § 521, Lubke was required to list this judgment as an asset on his schedule of assets. *See Kunica v. St. Jean Financial, Inc.*, 233 B.R. 46, 52 (S.D.N.Y. 1999)("A basic tenant of bankruptcy law is that all assets of the debtor, including all pre-petition causes of action belonging to the debtor, are assets of the bankruptcy estate that must be scheduled for the benefit of creditors."). At the point Lubke filed for Chapter 7 bankruptcy, he no longer had any legal authority over the judgment and was divested of standing to continue to prosecute or defend the appeal. *See Vreugdenhill v. Navistar International Transportation Corp.*, 950 F.2d 524, 525 (8th Cir. 1991)(Chapter 7 debtor who failed to list cause of action on schedule of assets cannot later prosecute claim after emerging from bankruptcy because cause of action was still asset in bankruptcy estate); *Barletta v. Tedeschi*, 121 B.R. 669, 671-72 (N.D.N.Y. 1990)(debtor may not bring suit on a cause of action that is property of the bankruptcy estate unless the cause of action has been abandoned by the trustee; *Ayazi v. New York City Board of Education,* No. 98-CV-7461 (NGG)(CLP), 2006 U.S. Dist. LEXIS 48003 at *28 (E.D.N.Y. July 14, 2006)(holding plaintiff divested herself of standing to bring cause of action by filing for Chapter 7 bankruptcy). And because Lubke never listed this Court's judgment on his schedule of assets, the judgment remained the property of the bankruptcy estate even after Lubke received his discharge and his bankruptcy was closed. *See* 11 U.S.C. § 554(c) and (d); *Vreugdenhill*, 950 F.2d at 525 (cause of action not listed in schedule assets by debtor remained property of bankruptcy

The next day, Reed filed a notice with this Court informing the Court of the City's offer of judgment under Rule 68 and her acceptance. Attached as an exhibit to the notice was a copy of the City's offer of judgment and a certificate of service establishing that the City had served the offer on Lubke's attorney, Hurlbut. The notice failed to contain proof that Reed had served her acceptance on the City.

The City filed its petition for a rehearing on August 8, two days before Reed accepted the City's offer of judgment. The City first learned of Lubke's bankruptcy when Reed accepted its offer of judgment on August 10. A few days later, the City filed a motion requesting leave from the court of appeals to supplement its petition for a rehearing to address the issue of Lubke's bankruptcy and to argue that his claim should now be judicially estopped. Hurlbut filed a response on behalf of Lubke arguing that judicial estoppel does not apply and that the City should be bound by its offer of judgment that was timely accepted by Reed.

Soon thereafter, the court of appeals directed the parties and Reed to appear before it on September 6. The court of appeals informed the parties that the following questions were to be

---

estate and was not abandoned to the debtor under 11 U.S.C. § 554(c) and (d)); *Jeffrey v. Desmond,* 70 F.3d 183, 186 (1st Cir. 1995)(same). Thus, since June 2005, when Lubke filed his voluntary petition for Chapter 7 bankruptcy, he has been divested of any legal title and authority over this cause of action and judgment, and the court of appeals had no choice under the law but to allow Reed, as the trustee of the bankruptcy estate, to substitute in as the real party in interest. *See* 11 U.S.C. § 323 (a) and (b)(the trustee is the representative of the bankruptcy estate and has authority to sue or be sued).

4

considered:

>   1.  Whether and what type of sanctions should be imposed for the appellee's conduct of the appeal under false pretenses?
>   2.  Whether the Rule 68 offer of judgment should be enforced?
>   3.  Whether judicial estoppel bars enforcement of any or all of the judgment?

(App. to Def.'s Resp. to Mot. to Enforce Rule 68 at 33.) Reed was not permitted to submit a brief for the hearing because the court of appeals had not granted her motion to substitute into the case. See note 2, *supra*. Instead, Hurlbut, Lubke's attorney, had to submit a brief on Reed's behalf. The court of appeals held its hearing and took the matters under advisement.

After the hearing, Reed filed a complaint with the bankruptcy court to revoke Lubke's discharge alleging, among other things, fraud on the part of Lubke for his failure to list the judgment as an asset. Hurlbut answered on behalf of Lubke, and later agreed with Reed to a judgment revoking the bankruptcy discharge.

On December 19, 2006, the court of appeals denied the City's petition for a rehearing and denied its motion for leave to supplement. The court of appeals then issued the following mandate:

> . . . the mandate for our opinion filed June 30, 2006, is hereby issued.
>
> Therefore, as we stated in that opinion, the case is remanded to the district court to recalculate damages. We note that after entry of final judgment by the district court, after the issuance of our opinion on appeal, and

5

>after the submission of a petition for panel rehearing, it was brought to this Court's attention that Lubke filed for bankruptcy on June 10, 2005.  In his bankruptcy filing, Lubke did not disclose his judgment against the City of Arlington.  Subsequently, a motion to revoke discharge was filed, and an agreed judgment revoking discharge has been entered in the bankruptcy court.
>
>Citing Lubke's bankruptcy filing and nondisclosure of the judgment, the City has asked this Court to judicially estop Lubke from asserting his FMLA case on appeal. Because of the timing of Lubke's bankruptcy filing, judicial estoppel was not addressed below.  And the record here is not sufficiently developed for this Court to decide the issue.
>
>It is also ORDERED, therefore, that on remand, the district court shall determine in the first instance, with an evidentiary hearing if necessary, whether judicial estoppel applies.  *See In re Coastal Plains,* 179 F.3d 197, 210 (5th Cir. 1999).
>
>Following the district court's determinations regarding damages and judicial estoppel, any appeal of those determinations should be returned to this panel; and we retain jurisdiction during the pendency of the remand. *See Wheeler v. City of Columbus,* 686 F.2d 1144, 1154 (5th Cir. 1982).

*Lubke v. City of Arlington,* 473 F.3d 571 (5th Cir. 2006)(order denying petition for rehearing).  The order denying the City's petition for a rehearing and the mandate did not address the sanctions or the Rule-68 issues.

6

II.  Analysis

    A.  The Mandate Rule

The City argues that the mandate rule prohibits the Court from granting Reed's motion to enforce the offer of judgment.  The City contends that the mandate of the court of appeals specified that the Court is to conduct further proceedings on the issues of judicial estoppel and damages, and that the Court is strictly limited to addressing only those two issues.  (Def.'s Resp. to Pl.'s Mot. to Enforce Rule 68 at 4.)

Reed sees it differently.  While conceding that under the mandate rule the Court is not free to deviate from the appellate court's mandate, she argues that the Court "is free to pass upon any issue [that] was not expressly or impliedly disposed of on appeal."  (Pl.'s Reply at 4.) Reed contends that the City has failed to show that the court of appeals implicitly considered the Rule 68 offer of judgment and declined to enforce it.  Reed draws this conclusion from her belief that "the [court of appeals] did not have the power to enter the judgment under Rule 68" and that "it is the province of the district court to enter the judgment under Rule 68."  (*Id.* at 5.)

"'The mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court.'" *Henderson v. Stalder,* 407 F.3d 351, 354 (5th Cir. 2005)(quoting *United States*

7

*v. Lee,* 358 F.3d 315, 321 (5th Cir. 2004)). The rule "simply embodies the proposition that a district court is not free to deviate from the appellate court's mandate." *Kapche v. City of San Antonio,* 304 F.3d 493, 496 (5th Cir. 2002)(internal quotations and citations omitted). The district court, on remand, is required to implement both the letter and spirit of the mandate. *Crowe v. Smith,* 261 F.3d 558, 562 (5th Cir. 2001). When further proceedings are specified in a mandate of a court of appeals, "the district court is limited to holding such as are directed," and "may not disregard the explicit directives of that court." *Id.* (internal quotations and citations omitted).

The mandate rule is considered to be a corollary to the law-of-the-case doctrine. *Id.* Generally, under that doctrine, an issue of law decided on appeal may not be reexamined either by the district court on remand or by the court of appeals on a subsequent appeal. *Kapche,* 304 F.3d at 496. The law-of-the-case proscription applies regardless of whether the issue was decided explicitly or implicitly. *Crowe,* 261 F.3d at 562. Although a mandate is completely controlling as to all matters within its compass, the district court is still "free to pass upon any issue [that] was not expressly or impliedly disposed of on appeal." *Gulf Coast Building and Supply Company, Inc. v. International Brotherhood of Electrical Workers, Local No. 480,* 460 F.2d 105, 107 (5th Cir. 1972).

The central question for the Court is whether the order of the

8

court of appeals denying the petition for panel rehearing and the mandate of that court disposed of the Rule-68 issue. Unfortunately, the order and mandate of the court of appeals is silent on this question, leaving the Court to decide whether it disposed of the Rule-68 issue implicitly.[2]

The record is clear; the issue of whether the offer of judgment should be enforced was before the court of appeals. Although it made no explicit mention of the issues regarding sanctions and the enforcement of the offer of judgment in its order and mandate, the wording of the order and mandate and the fact that the court of appeals refused to impose sanctions and enforce the offer of judgment implies that those issues were resolved by that court.

First, the court of appeals concluded that the record was not sufficiently developed for it to decide the judicial-estoppel issue. Its mandate directed this Court to decide the judicial-estoppel issue and to hold a hearing if necessary, which would allow for the record to become sufficiently developed for possible later appellate review. That implies that the court of appeals did conclude that the record was sufficiently developed for it to decide whether sanctions should be imposed against the appellee and

---

[2] It is lamentable that the court of appeals has placed its trial court in the difficult position of reading tea leaves to determine its intent on issues that court itself identified as being before it. In fact, the trial court cannot with certainty determine whether the court of appeals decided or declined to decide the Rule-68 issue.

9

whether the offer of judgment should be enforced. In denying the petition for a rehearing, the court of appeals declined to sanction the appellee and it refused to enforce the offer of judgment.

Next, the mandate directs this Court to consider the question of judicial estoppel "in the first instance." This Court infers that this directive is given because, if the Court concludes that judicial estoppel should be invoked, the case likely would be dismissed with prejudice and the question of damages would become moot. The court of appeals also seems to imply that it did not intend for this Court to consider the question of enforcing the Rule 68 offer of judgment.

The City's offer of judgment was for complete settlement of the case. If enforceable, the offer of judgment would moot this case and divest this Court and the court of appeals of jurisdiction. It is well settled that "federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Society v. Heckler,* 464 U.S. 67, 70 (1982). Generally, a settlement renders moot any case between the parties growing out of the settlement even if the parties remain at odds over particular issues that they are litigating. *See Lake Coal Co., Inc. v. Roberts & Schaefer Co.,* 474 U.S. 120 (1985)(vacating judgment of lower court and remanding with instructions to dismiss case as moot when there was a "complete settlement of the underlying causes of

10

action").

Presumably then, the question of whether the offer of judgment is enforceable must have been decided by the court of appeals since its determination ultimately affects the jurisdiction of this Court and the court of appeals.  If the court of appeals had determined that the offer of judgment is enforceable, logic suggests that it would have remanded the case to this Court for an appropriate entry of judgment to that effect, thus disposing of the case.  Or, because of its jurisdictional consequences, if the court of appeals concluded that the record was insufficiently developed to decide the Rule-68 issue, that court probably would have mandated that this Court consider that issue even before considering whether judicial estoppel should be imposed.

In light of Rule 68's "clear policy of favoring settlement of all lawsuits," *Marek v. Chesny,* 473 U.S. 1, 10 (1985), the Court assumes that if the court of appeals concluded that there had been an enforceable offer of judgment or that the issue still needed to be addressed, it would have remanded the case to this Court for entry of a judgment consistent with the offer of judgment or directed this Court to determine that issue.  Instead, the court of appeals remanded the case to this Court for further litigation on other issues.  That implies that the court of appeals decided that there was not an enforceable offer of judgment.

Finally, the mandate of the court of appeals explicitly

11

directs this Court to address the questions of judicial estoppel and the calculation of damages, but omits the questions of sanctions against Lubke and enforcement of the offer of judgment. By specifically including in its mandate a direction to this Court that it is to consider the question of judicial estoppel in the first instance and then damages, the Court will presume that the court of appeals purposefully and intentionally excluded from this Court's consideration the questions of sanctions and enforcement of the offer of judgment. *Cf. Russello v. United States,* 464 U.S. 16, 23 (1983)("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion and exclusion.").

Reed argues (but cites no authority) that the court of appeals must have declined to decide the Rule-68 issue because it was without authority to enforce the offer of judgment. The Court disagrees. The court of appeals has the authority to enforce offers of judgment that have been accepted by a plaintiff. In *Ramming v. Natural Gas Pipeline Company of America,* 390 F.3d 366, 371 (5th Cir. 2004), the Fifth Circuit held that the district court erred when it refused to enter judgment in accordance with an offer of judgment that the plaintiff had accepted. The court of appeals held that once a valid offer of judgment is made that has been accepted, the district court does not "have the discretion to

12

refuse to enter the Offer of Judgment . . . ." *Id.* Here, if the court of appeals decided that there had been a valid offer of judgment accepted by the plaintiff, it could have remanded the case to this Court and directed this Court to enter judgment in accordance with the offer of judgment. The fact that the court of appeals did not do so implies that the court of appeals concluded that the offer of judgment was not enforceable.

As noted above, the mandate rule precludes this Court from passing on any question of law or fact that was decided by the court of appeals and requires this Court to carry out both the letter and spirit of the mandate. The court of appeals—after notifying the parties that it would be taking up the issues of sanctions, the City's offer of judgment, and judicial estoppel; and after receiving briefs and hearing oral argument on those issues—declined to impose sanctions, refused to enforce the offer of judgment, and directed this Court to only take up the issues of judicial estoppel and the recalculation of damages. Thus, the Court concludes that the mandate of the court of appeals prohibits this Court from deciding whether the City's offer of judgment made on July 31, 2006, and accepted by Reed on August 10 is enforceable.

B. Fraud

Although the Court has decided that the mandate of the court of appeals prohibits it from granting Reed's motion for enforcement

13

of the City's offer of judgment, the Court finds it appropriate to address the City's allegations of fraud and misconduct against Lubke's attorney, Hurlbut, and Reed.  The City's main argument is that Hurlbut and Reed failed to immediately inform it that Lubke no longer owned his claim against the City.  (Def.'s Resp. Mot. to Enforce Judgment at 10.)  The City contends that Hurlbut and Reed were aware of Lubke's bankruptcy eight days before Reed gave her notice of accepting the offer of judgment.  The City also contends that during those eight days, but before Reed accepted the offer, Hurlbut contacted the City to request additional time to consider the offer.  "During that entire time," the City complains, "<u>nobody</u> contacted the lawyers for the City to inform them that Lubke no longer owned the claim, that a bankruptcy trustee did, and that she was interested in accepting the offer the City made." (*Id.*)(Emphasis in original.)  The City argues that Hurlbut and Reed "each had an ethical duty to inform the City——before attempting to accept the offer——of such a material change in circumstances as the original plaintiff's loss of legal capacity to pursue the claim." (*Id.*).  "Astonishingly," the City contends, Hurlbut and Reed "chose instead to perpetuate Lubke's falsehood."  (*Id.*)  The reason for their conduct is obvious to the City, they "knew that the City would withdraw the pending offer immediately after it learned of Lubke's bankruptcy."  (*Id.*)

It is clear from the record that at the time the City made its

14

offer of judgment, Hurlbut was not aware that Lubke had previously filed for Chapter 7 bankruptcy and received a no-asset discharge, and Reed was unaware that Lubke had failed to list his judgment as an asset of the bankruptcy estate.  Therefore, it is clear that the City's offer of judgment was in no way induced by any fraudulent misconduct on the part of Hurlbut or Reed.  In reality, the City's offer came after the decision of the court of appeals affirming the City's liability under the FMLA and was most likely the result of the City's evaluation of the costs and risks of further litigation balanced against the likelihood of success before the trial court on calculation of damages.

The City offers no authority to support its position that both Hurlbut and Reed had an ethical obligation to immediately inform it of Lubke's bankruptcy.  No doubt Hurlbut was surprised by his client's revelation and needed some time to determine the consequences and the best course of action to protect Lubke.  Reed, in turn, also probably was surprised and needed an interval to determine whether any remedial course of action could be pursued in the bankruptcy court.  But more importantly, if Hurlbut and Reed were committed to furthering Lubke's alleged fraud, they would have had Lubke accept the City's offer and never informed it of the bankruptcy in the first place.  Instead, Reed had the bankruptcy reopened so that she could assume control as trustee of Lubke's Chapter 7 bankruptcy estate and accepted the offer herself as the

real party in interest. There is nothing illegal, unethical, or underhanded with the way Hurlbut and Reed decided to handle the bankruptcy issue.

The Court is convinced that the City's real gripe is that it made its offer of judgment without knowing that Lubke had filed for Chapter 7 bankruptcy but failed to list the judgment as an asset of the bankruptcy estate, and the City feared that Reed's acceptance might prevent it from seeking to have the entire judgment erased under the doctrine of judicial estoppel. Judicial estoppel, however, is "an equitable doctrine invoked by a court at its discretion." *Maine v. New Hampshire,* 532 U.S. 742, 749 (2001)(internal quotations and citations omitted).

In its most basic form, the doctrine "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Id.* Judicial estoppel is designed "to protect the integrity of the judicial process" by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *In the Matter of: Coastal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir. 1999). "Because the doctrine is intended to protect the judicial system, *rather than the litigants,* detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *Id.* (emphasis in original).

Accepting that judicial estoppel is an equitable doctrine

16

designed to protect the Courts and not the litigants, the City cannot complain that its offer of judgment had been made without knowledge that it could assert judicial estoppel. Moreover, the Supreme Court has made clear that invocation of judicial estoppel, because it is an equitable doctrine, is within the sound discretion of the Court. *Maine,* 532 U.S. at 749. The Supreme Court stressed that there are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.* at 751. The Court is free to consider additional or different factors that "may inform the doctrine's application in specific factual contexts." *Id.*

The Court is mindful that invoking judicial estoppel here may have inequitable consequences. One is that the City would reap a windfall. After having its day in court and after having an appeal, it is the settled law of this case that the City violated the FMLA and is thus liable to Lubke for damages. Another is that none of Lubke's creditors would receive what they would otherwise be entitled to under the bankruptcy laws. Reed has successfully reopened Lubke's Chapter 7 bankruptcy and has had his no-asset discharge revoked. Applying judicial estoppel, however, would eliminate, to the detriment of Lubke's wholly innocent creditors, this substantial asset from the bankruptcy estate. At this moment, it is not clear to the Court why it should nonetheless invoke an equitable doctrine that may potentially work inequities upon

17

innocent third parties and grant a windfall to an undeserving party when any harm to the judicial process may have been cured by Reed's successfully reopening Lubke's bankruptcy and having his discharge revoked.

Although the City may feel strongly about the issue of judicial estoppel, it does not justify its attacks upon Hurlbut and Reed. The City and the parties are cautioned that the Court does not take lightly allegations that a member of its bar has engaged in fraud, misconduct, or unethical behavior. The parties are warned that the leveling of such allegations against opposing counsel without credible evidence to substantiate them will be viewed with great disfavor.

III. Conclusion

The Court concludes that the mandate of the court of appeals prevents this Court from deciding whether the City's offer of judgment, which was made and accepted while the case was still before that court, should be enforced. Accordingly, Reed's motion to enforce the City's offer of judgment under Rule 68 is DENIED.

SIGNED June 20, 2007.

*(signature)*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE